*W. C. Achi*, for defendant.

———

HENRI G. McGREW, a person non compos, by his Guardian, CHARLES L. CARTER, *vs.* ALPHONSINE McGREW.

QUESTION RESERVED.

HEARING, JUNE 19, 1894.      DECISION, JULY 21, 1894.

BICKERTON AND FREAR, JJ., AND ANSON BRUNSON, ESQ., IN PLACE OF JUDD, C.J., DISQUALIFIED.

A libel for divorce may be prosecuted on behalf of an insane person by his guardian, under our statutes.

OPINION OF THE COURT, BY FREAR, J. (A. BRUNSON, ESQ., DISSENTING.)

The question reserved by the Circuit Court for our opinion is that raised by the demurrer, namely, whether under our statutes a person *non compos* may, by his guardian, maintain a libel for divorce.

In the absence of statute, the general opinion in both England and America is that a suit for either nullity or separation may be maintained either by or against an insane person, but that in England a suit for divorce cannot be maintained either by or against an insane person, while in those of the United States in which the question has arisen a suit for divorce may be maintained against but not by an

insane person. 2 Bishop, M. & D., Secs. 304*a*-307, and cases there cited. But now in England, Massachusetts and Rhode Island, statutes have been passed which the courts have construed as authorizing suits for divorce either by or against insane persons. *Ib.*

The cases contain lengthy discussions of the policy of or reasons for, the distinction between an insane plaintiff and an insane defendant. The argument of the American courts seems to be that in the case of an insane defendant, the two conditions said to be essential to a divorce may be present namely, the fault of one party and the consent of the other, while in the case of an insane plaintiff the consent of the injured party is necessarily wanting, for the reason that an insane person, having no mind, cannot consent. It is argued further that marriage is a personal status, the making or unmaking of which is a personal matter, " depending on the choice of the heart, rather than of the head," " more on feelings and convictions than on considerations appreciably by others," and that therefore " it is in the option of the injured party " alone to say " whether he will forgive the offense or take a divorce for it." This reasoning might at first thought seem to indicate that marriage is solely a personal matter, in which the parties alone are interested, and that there is something in the nature of things to prevent its dissolution without the active consent of the injured party. And yet it is perhaps universally conceded that the state may, either from considerations of public policy or from considerations of what is deemed to be for the best interest of the parties immediately concerned, alter the conditions upon which the marriage status may be created or dissolved; and in pursuance of such power, as we have seen, statutes have been passed authorizing divorce suits by insane persons.

The distinction taken by the American courts is good so far as it goes. There are reasons, it is true, that apply to the case of an insane plaintiff which do not apply to the case of an insane defendant, for the consent of the plaintiff should, if possible, be required, while the fault alone of the defendant

is sufficient; yet is not this position inconsistent, so far as the question of consent is concerned, with the view that suits for separation may be maintained on behalf of an insane person, for is it not as much a matter of personal option in the one case as in the other for the injured party to say whether he will forgive, or take legal proceedings? It is true that in case of separation the insane person might, upon a possible return of reason, forgive his spouse and take her back; and that in some instances the protection, maintenance or other need of the insane person might be provided for by a decree of separation, without the necessity of going to the extent of granting a divorce. But, so far as the question of status or consent is concerned, there is no more reason in logic why the guardian, under the control of the court, may not exercise the option of forgiveness or suit in the case of divorce than in the case of separation, and there may be cases in which separation would not be sufficient to do justice to the injured party. The question for the legislature is one of policy entirely. It must be admitted that there are weighty reasons for and against either policy. The English courts in the early cases considered that on the whole the objections outweighed the advantages, and so, as we have seen, did not allow such suits either by or against insane persons; but when the Divorce Act was passed, giving them an opportunity to reconsider the question, they came to the conclusion that, on the whole, it was better policy to allow such suits either by or against such persons.

*Mordaunt vs. Mordaunt*, L. R. 2 P. and D., 103; *Baker vs. Baker*, L. R. 5 P. D., 142; 6 P. D., 12.

This conclusion commends itself to our reason. While to allow divorce proceedings by a guardian on behalf of his insane ward might possibly in some instances, result in the dissolution of a status, which the ward, if of sound mind, might prefer to continue, yet to allow such proceedings under no circumstances would operate as a license for the other spouse to " commit adultery, cruelty, desertion, and every other marital offense, with impunity." Nor can it even be

said that to allow such proceedings, is in all instances to take from the ward his right of choice, for if the offense of his spouse was committed without his knowledge prior to his insanity, or at any time during his insanity, the ward could not exercise a choice at all one way or the other, and therefore to say that no suit for divorce could be brought under any circumstances would practically amount to choosing for him one way—as much so as to say that such suit might be brought would amount to a choice the other way. The better policy, it seems to us, would be to allow such suits to be commenced, leaving it to the trial court to postpone the hearing in its discretion until such time as the ward may recover his reason if there is sufficient prospect of such recovery, and if not then to be vigilant in seeing that the ward is fully protected from fraud, collusion or other unfair advantage of any kind. The guardian is appointed for the benefit of the ward, and if it appears for the ward's benefit to have a divorce, the guardian should be allowed to bring the proper proceedings, since the ward himself cannot do so. This is the business of the guardian, and, although mistakes may be made in this respect as well as in other matters, by doing what the ward would prefer, if sound, to have left undone, yet on the whole it is better in this case as in other cases for the law to provide for the care of those unable to take care of themselves.

On authority, we should be obliged to hold that, in the absence of statute, this suit could not be maintained, and the sole question is whether our statutes go to the extent of allowing such suit. The question of policy, of course, cannot alter the law as passed by the legislature, but has considerable bearing upon the construction to be placed upon the statute in so far as it is doubtful, and should be considered in order to understand the state of the law in the absence of statute.

In Massachusetts the statute merely provided that libels for divorce should be signed by the libellant if sane or of age, otherwise by his guardian. The legislature in so doing

apparently considered that it was not altering the character of the marriage status, or making any great innovation in the law, but rather merely providing for the method of procedure. Before the statute no case had arisen in that State in which the guardian of an insane person had attempted to sue for a divorce on behalf of his ward. In England the statute did not in any way refer to insane persons, but the court held that a divorce might be obtained even by a guardian of the estate (not of the person) on behalf of such person, merely because the divorce statute made no exception as to such persons.

Our statute of divorce is much like the English statute so far as the purposes of this case are concerned. It does not refer to insane persons, but by the reasoning of English courts would undoubtedly authorize a suit for divorce by a guardian on behalf of an insane ward. It is true that our statute provides that the libel shall "be signed by the libellant," and that an insane person cannot do this. But the English statute went further and provided that the petitioner should verify his petition by affidavit, and yet it was held that this might be done by his committee, "who would in fact be the petitioner on the lunatic's behalf." But, if there should be any question on this point in our divorce act, it is solved by the provision of the law relating to guardians (Civil Code, Sec. 1358), that the guardian of an insane person "shall appear for and represent his ward in all legal suits and proceedings, unless where another person is appointed for that purpose." And we hold that this provision of the Code, taken in connection with the divorce act, authorizes suits for divorce by a guardian of the person and property on behalf of his insane ward. As remarked by the English court in *Baker vs. Baker*, supra: "If an insane respondent must defend herself as best she may by means of a guardian *ad litem*, I do not see where the act has indicated that an insane petitioner may not institute a suit for divorce through his committee, as he might sue for the breach of an ordinary contract;" and "as proceedings for divorce are civil, though

no provision for the case of lunatics is contained in the act, recourse must be had in such case to the ordinary forms of civil courts where lunatics are litigants."

It may be argued that because our statute relating to nullity expressly provides for the bringing of such suits by the guardian of a person insane or under legal age, and because there is no similar provision in the divorce act, it must be inferred that the legislature meant to exclude divorce suits by guardians, on the principle that *expressio unius est exclusio alterius.* But this is purely a question of intention. The divorce act was passed some years after the provisions of the code which relate to nullity; and there was nothing special to call the attention of the legislature to the case of persons insane or under age in the divorce law as there was in the nullity law, for insanity and non-age are made grounds of nullity but not of divorce. It would hardly be contended that the provisions for suits by guardian in the nullity act would exclude suits by guardian under Sections 1100, 1116 and 1118, of the Civil Code which relate to actions on contract and other matters or under Sections 1336–1341 of the Civil Code which relate to suits for separation, but which do not refer to guardians in any way.

The demurrer should be overruled.

*A. S. Hartwell* and *Carter & Carter*, for libellant.

*C. W. Ashford*, for libellee.

---

### Dissenting Opinion.

I dissent. This proceeding is a libel for divorce commenced February 8th, 1894. Two weeks prior to that time Henri G. McGrew had, by a competent court, and by proper proceedings for that purpose, been adjudged to be *non compos mentis*, and this action is brought in his name by his duly constituted guardian. The bill, in addition to setting forth the above facts, alleges a marriage between plaintiff and defendant, at Paris, in France, on March 25th,

1890, the good conduct of the husband since the marriage, and then charges the wife with adultery with divers persons, naming some of them, and that the various acts of adultery have been committed by her, both in Honolulu and San Francisco, at divers times during the two years next preceding the commencement of this action and prays for a divorce, etc.    To this bill the defendant interposes a demurrer, upon the ground that it appears upon the face of the bill that the plaintiff has not the legal capacity to bring or maintain this action.    The wording of the demurrer is somewhat *sui generis* but is sufficient to present the question as above stated.    Plaintiff joins issue upon this demurrer, and the Judge of the Circuit Court, First Circuit, reserves the question as to the sufficiency of this demurrer and certifies the same to this Court for its opinion thereon.

The words "*non compos mentis*" are defined by Bouvier as constituting "a generic term, including all the species of madness, whether it arise from idiocy, sickness, lunacy, or drunkenness." These words themselves import the condition of a person not of sound mind, memory, or understanding. In their legal acceptation they import such want of mind or understanding as renders the person incapable of contracting, or of managing or conducting his own business affairs with ordinary prudence and discretion.    In all civilized governments such persons are confided to the care of certain courts, and by statute such courts are, upon proper showing and proceedings had, authorized and empowered to appoint guardians of the estate of such party, and in cases where such disability renders him incapable of caring for himself, then of his person as well as of his estate.

Sec. 1350 of our Comp. Laws, taken in connection with Sec. 1372, provides for the appointment of such guardian. Under the provisions of this statute, this libellant has been duly adjudged *non compos mentis*, and a guardian of his person and estate has been duly appointed, and such adjudication, so long as the guardianship continues, is conclusive evidence

of the disability of the ward.    *White vs. Palmer*, 4 Mass.,
147.

The demurrer interposed by the defendant must be held to
admit all the allegations of the bill, including the adultery
charged, and that, it is conceded, constitutes good and
sufficient ground for a divorce if the action was brought by a
libellant of sound mind and without the intervention of a
guardian.    The questions arising upon this record are :    1st.
Can a guardian of an incompetent person, at common law,
institute and maintain, in the name of his ward, an action for
a divorce ?    2nd.    If not at common law, do the statutes of
these islands confer the power upon, or make it the duty of
the guardian to commence and prosecute such action ?

First:    " The remedy by divorce is purely a civil and
private prosecution, under the control and at the volition of
the party aggrieved, and he may bar himself of the remedy
in several ways by his own act."    2 Kent's Com., 100.

There is no offense which either of the spouses can com-
mit, except the actual killing of the one by the other, which,
*per se*, operates to annul the marriage, neither is there any
act or offense by the guilty party, however heinous or revolt-
ing, which the innocent party may not condone.    That
the respondent in this case has often and with divers
persons been guilty of acts of adultery, running back
through a period of two years immediately preceding
the commencement of this action, is admitted by her
pleading.    It is true she is not finally nor necessarily bound
by such admission, for should this demurrer be overruled,
upon proper application, she would doubtless be permitted
to answer and deny all the accusations made against her,
should she be so advised; but as the case now stands all
charges against her are admitted, but it will be observed that ·
the plaintiff was not adjudged to be *non compos mentis* until
January 24th, 1894, and this action was commenced only
fifteen days afterward, and until such adjudication he is, in
law, presumed to have been sane and in the full possession
of sound mental faculties, so that it appears from plaintiff's

own showing that these acts of adultery now complained of had been running through a period of twenty-three months and a half of his sanity, and during which time he was, presumptively, continuously living and cohabiting with her as his wife. In his complaint it is not averred that he was ignorant of these several offenses, and as it is always presumed that a pleader will state his case in his own behalf as fully as the facts will warrant, it is legal to presume that he had such knowledge; and yet, during all this time, he took no steps looking to a divorce from his wife, or in any way terminating his marital relations with her.

The power to condone is personal, and can be exercised at the will and pleasure of the innocent party, but by no other person; and it would seem equally clear that he cannot be deprived of this personal right and privilege by any other person; and yet, to successfully prosecute this action to final decree, by a guardian, at a time when the ward is incompetent to give any rational expression to his wishes in the premises, is to so deprive him. If rational he might be not only willing but eager to condone the wrong. There may exist, for aught the court or his guardian can know, many reasons, which, to the ward, when sane, would overcome all resentment against the guilty party, and make it desirable for him to continue the marriage relation notwithstanding the wrong committed. His silence for two years lacking two weeks before the commencement of this suit, and during the time of the commission of those offenses by the respondent, ought not to be ignored by a court. His right, personally, to elect or reject condonation cannot be destroyed at the will of a guardian of his person and estate. The will of the latter may not be, nor is it presumed to be the will of the ward. His will upon this question, expressed at a time when his intelligence is impaired should only be considered by a court. The record before me does not show that he has ever expressed that will or his election, but it does show that when this action was commenced for and not by him, he was incapable of expressing any intelligent will upon the subject.

"The right to a divorce is strictly a personal right which can be waived by the innocent party, and which cannot be asserted except by his or her will; therefore, if the injured party be insane, no matter how outrageous the conduct of the other party, no matter what scandal may result, no relative or guardian or committee can bring a suit for divorce." 5 Am. & Eng. Encycl. of Law, 768, *Worthy vs. Worthy*, 36 Ga., 45. In the last above cited case the court uses the following language, excepting we change the word "husband" to "wife" and *vice versa* to make it fit this case. "For the crime of adultery with which the *wife* is charged, the law has provided punishment, and the father or friend may prosecute at their will; but whether after gross and repeated infidelities, the *husband* will continue to regard *her* as *his wife* and live with *her* as *her husband*, is for *his* decision only. Death only can dissolve the marriage relation without his consent, and no divorce can or ought to be had in this or any case but through the agency and will of the injured party."

In *Birdzell vs. Birdzell*, 33 Kan., 433, the court uses the following language : "Marriage is a personal *status* and relation assumed for the joint lives of the parties and can never be created or brought into existence except with the free and voluntary consent of the parties assuming the same, and it can never be dissolved or destroyed while both parties are living, so as to affect an innocent party thereto, except for a grievous and essential wrong committed against such relation by the other party, and with the free and voluntary consent, and indeed, with the active and affirmative volition of the wronged and innocent party."

*Bradford vs. Abend*, 89 Ill., 78, was an action to set aside a decree of divorce granted to the wife, in an action brought by her guardian at a time when she was insane and actually confined in an asylum in an adjoining state. That there was collusion between the guardian and the defendant is patent upon the face of the record, but the Supreme Court of the State of Illinois thought it unnecessary to consider that branch of the case, and based its decision solely upon the

ground that "being insane, she could give no consent to the proceedings had in the divorce case, and hence everything that was done in her name was invalid. Consent involves an act of reason, and when one is bereft of reason, it follows that there can be no consent given that comes from reflection." In that case the decree of divorce was set aside as fraudulent and void.

Under the General Divorce Statutes of England, it has been held that the guardian of a lunatic may bring a suit for a mere legal separation or a nullity suit, or a suit for alimony; and in some of the United States the legislature has expressly conferred upon guardians the right to sue for and obtain for their insane wards absolute divorces, but in all such cases the decrees have uniformly been based upon the special statute authorizing them, and not upon the common law. Such is the case in Rhode Island and since 1860 in Massachusetts.

Second: Do the statutes of Hawaii confer such right or power?

Sec. 1351, Comp. Laws, gives to the guardian when duly appointed "the care and custody of the person of the ward, and the management of all his estate." This expresses generally his statutory powers, but the wife constitutes no part of the estate, real personal or mixed, of the husband. The days of such slavery and proprietorship have, among the civilized nations of the earth long since sunk into endless night; neither is the wife a part of the person of the husband. The legal fiction of the unity of the spouses never included their personality or individuality. The guardian, under his letters, acquires no control of the wife, but only the person of his ward.

Among other duties imposed upon the guardian by legislative enactment is the following found in Sec. 1357, Comp. Laws: "Every guardian appointed under the provisions of this chapter  *  *  *  shall appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose as guardian or next friend."

This section and Section 1351 were enacted with reference to the same general subject, and to be properly construed must be read together, and especially so when considering such actions as the guardian may bring when his ward is the plaintiff. Of course if the ward is made a defendant whatever might be the action, being an involuntary litigant, it would doubtless be the duty of the guardian to appear and protect the interests of his ward in all such litigation, but such actions as are necessary or proper for the protection of the person or estate of the ward are all, in my opinion, which, by the provisions of this section, the guardian of his own volition is authorized to bring or maintain in the name of his ward.

"Guardians are not technically representatives of anybody. They simply stand in the position of protectors. The guardian is the counsel assigned by operation of law, to conduct the suit." *Fox vs. Minor*, 32 Cal. 112.

Should the estate real or personal be threatened with waste or loss, the guardian could and should take any action necessary or proper for its protection. Should he deem the bodily presence of the offending wife harmful or injurious to the person mental or physical, of his ward, he could doubtless find ways and means through the courts for personal protection from such conditions, or he may bring any other action necessary to protect the life or person of his ward, but an action for a divorce does not come within this category; on the contrary, it is held both in England and the United States that an action for divorce is an action *in rem* not *in personam*.

This construction of the statute is further borne out by the provisions of Sec. 3, Comp. Laws, relating to divorce, p. 435. "All proceedings for divorce shall be commenced by libel, *to be signed by the libellant*, and sworn to." The verification may be by a third party, but the signing must be by the libellant in *pro. per.*, and since, in this case, he is *non compos mentis*, he can, in law, no more sign it than he can, in fact, understand it.

Again, by the divorce statutes of these islands, the legislature has expressly authorized libels for divorce to be signed by parent or guardian under certain conditions when one of the parties was under legal age at the time of the marriage. Sec. 1314, Comp. Laws.

So the guardian of an idiot or insane person may bring an action for divorce, providing the ward was *non compos mentis* at the time of marriage. Sec. 1318, Comp. Laws. With those two exceptions the legislative will stopped, leaving all other actions for divorce subject to the common law of England, as ascertained by English and American decisions. Statutes, 1892, Sec. 5, p. 91. *Expressio unius est exclusio alterius.*

Our statute relating to guardians, their powers and duties, as hereinbefore quoted, are exact and literal reproductions of the statutes of Massachusetts on the same subject, and there, as early as 1810, in the case of *Winslow vs. Winslow*, 7 Mass. 95, which was an action for absolute divorce on the ground of the adultery of the wife, and the libel was subscribed by a guardian who had been appointed over the libellant, the Supreme Court said : " It would be monstrous to dissolve a marriage upon such an application. It could not be known that the party ever gave his assent to the prosecution. If he is desirous of a divorce, and has sufficient grounds to obtain one, he must file his libel in his own name."

This decision is practically a holding that the words " shall appear for and represent his ward in all legal suits and proceedings " do not include an action for divorce. The Legislature of that State recognized this construction, and in the General Statutes of 1860, Sec. 16 of the Divorce Law, p. 533, it is provided that in all cases " every libel shall be signed by the libellant if of sound mind and legal age to consent to marriage, otherwise it may be signed by his or her guardian, or by any person admitted by the court to prosecute the same as next friend of this libellant." Since this amendment of the divorce laws of Massachusetts, several actions for the divorce of persons *non compos mentis* have been brought by the guardian and sustained by the court, but the

statute is always referred to in the decision as the authority upon which it rests. *There is no such statute in Hawaii.*

The question of policy in this or any other given case, is one for the legislature and not for the court. Questions of expediency are addressed to the Executive, policy to the Legislative, and the law to the Judicial. Each is declared to be a separate and independent branch of the Government, and neither should trench upon or exercise the powers of the other.

For these reasons I am of the opinion that the demurrer should be sustained and the action dismissed.