[S. F. No. 1230.   In Bank. — February 28, 1901.]

ALPHONSINE McGREW, Respondent, v. MUTUAL LIFE
INSURANCE COMPANY OF NEW YORK, Appellant.

FOREIGN JUDGMENT OF DIVORCE — SUIT BY. GUARDIAN OF INCOMPETENT
HUSBAND — COMITY. — A judgment of divorce rendered in a foreign
court under the Republic of Hawaii, in pursuance of a statute
thereof permitting the guardian of an incompetent husband to
maintain an action for divorce against the wife, must, by comity,
be given full force and effect by the courts of this state.

ID. — CONSTRUCTION OF FOREIGN STATUTE OF DIVORCE. — The construc-
tion given by the courts of the Republic of Hawaii to a statute of
that republic, to the effect that it permits an action for a divorce to
be maintained by the guardian of an incompetent person, cannot
be assailed to defeat a judgment of divorce granted thereunder.

ID. — FOREIGN STATUTE FORFEITING PROPERTY RIGHTS. — A statute of
the Republic of Hawaii, declaring that where a divorce is decreed
for the adultery of the wife the husband shall hold her personal
estate forever, can have no operation pending suit for such divorce,
and can have no applicability until the entry of judgment.

ID. — JUDGMENT NOT DECREEING PROPERTY RIGHTS — DOMICILE OF WIFE
IN CALIFORNIA — LIFE INSURANCE PAYABLE TO WIFE. — Although
the wife, who appeared in the action in Hawaii, was bound by the
decree of divorce there rendered, yet, where the decree did not pur-
port to fix or determine any property rights, and the wife became
domiciled in this state prior to the entry of the decree, the statute
of the Republic of Hawaii declaring a forfeiture of her personal
property to the husband could not operate in this state to affect
her, or to forfeit to the husband a policy of insurance which, by its
terms, was payable to her, and which, at the time of the decree,
was governed by the law of her domicile here.

ID. — SUIT FOR DIVORCE — SEPARATE DOMICILE OF WIFE. — When the
husband begins a suit for divorce, the domicile of the wife ceases to
be the domicile of the husband, and she may acquire a separate
actual domicile by change of residence from one country to another,
pending the suit.

ID. — ACTION UPON LIFE INSURANCE POLICY — PAYMENT TO HUSBAND'S
ADMINISTRATOR. — In an action by the divorced wife upon the in-
surance policy payable to her, it is no defense that the insurance
company had paid a judgment recovered against it by the adminis-
trator of the deceased husband, and evidence of such payment was
properly excluded.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco.   George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Chickering, Thomas & Gregory, and Edward Lyman Short, for Appellant.

The divorce obtained in Hawaii, being good there, is good everywhere. The proceeding was *in rem*, and binding upon all the world. (Code Civ. Proc., sec. 1915, subd. 1; *In re Newman*, 75 Cal. 213;[1] *In re James*, 99 Cal. 374;[2] *Burlen* v. *Shannon*, 3 Gray, 387; *Cheely* v. *Clayton*, 110 U. S. 701; *Hilton* v. *Guyot*, 159 U. S. 167; Black on Judgments, sec. 822.) A local statute may authorize a divorce suit to be instituted by guardian. (*McGrew* v. *McGrew*, 9 Hawaii, 478; 2 Bishop on Marriage and Divorce, 306; *Thayer* v. *Thayer*, 9 R. I. 377; *Garnett* v. *Garnett*, 114 Mass. 379;[3] *Cowan* v. *Cowan*, 139 Mass. 377; *Baker* v. *Baker*, L. R. 9 P. D. 142.) The divorce was absolute, though subject to be set aside in the supreme court on exceptions. (*Carter* v. *Mutual Life Ins. Co.*, 10 Hawaii, 117.) The construction given to the statutes of the republic of Hawaii by the courts of that republic must be accepted as the true sense of those statutes. (*Elmendorf* v. *Taylor*, 10 Wheat. 152; *Bloodgood* v. *Grasey*, 31 Ala. 571.) The Hawaiian statute giving all rights in the wife's personal property to the husband is mandatory, and the right to the insurance policy passed to the husband. (*Barret* v. *Failing*, 6 Saw. 473; 111 U. S. 523; *Bamford* v. *Failing*, 4 Or. 30; *Carter* v. *Mutual Life Ins. Co.*, supra.) Both parties being domiciled in Hawaii when the suit was brought, jurisdiction could not be ousted by any subsequent event nor change of domicile of the wife. (12 Ency. of Law, 305, and note; *Carter* v. *Mutual Life Ins. Co.*, supra; *Tapley* v. *Martin*, 116 Mass. 275; *Lowry* v. *Hall*, 2 Watts & S. 129;[4] *Harrison* v. *Harrison*, 20 Ala. 269.) A legal one acquired in one jurisdiction is good all the world over. (Sutherland on Statutory Construction, sec. 13; *Beard* v. *Barge*, 7 B. Mon. 133; *Forbes* v. *Scannel*, 13 Cal. 242; *Kraemer* v. *Scannel*, 52 Cal. 303; *Estate of Appel*, 66 Cal. 432; *Cahalan* v. *Monroe*, 70 Ala. 271; *Bash* v. *Gayner*, 73 Ala. 162; *Lichtenberger* v. *Graham*, 15 Ind. 288; *Harral* v. *Harral*, 39 N. J. Eq. 279;[5] 13 Ency. of Law, 514.) When the wife is in fault, she cannot acquire a separate domicile. (5 Ency. of Law, 756;

[1] 7 Am. St. Rep. 146.
[2] 37 Am. St. Rep. 60.
[3] 19 Am. Rep. 369.
[4] 37 Am. Dec. 495.
[5] 51 Am. Rep. 17.

*Harrison* v. *Harrison*, 20 Ala. 329; *Burlen* v. *Shannon*, 115 Mass. 431; *Kashaw* v. *Kashaw*, 3 Cal. 312; *Beard* v. *Knox*, 5 Cal. 257.[6])

Platt & Bayne, for Respondent.

The policy of our law disfavors forfeiture. (Civ. Code, sec. 1442; *People* v. *Perry*, 79 Cal. 112); and a court here cannot affect the separate property of the wife in an action for divorce (*Reid* v. *Reid*, 112 Cal. 274), and ought not to enforce a penal statute of a foreign country, purporting to forfeit her separate estate, on the ground of comity. (*Ferguson* v. *Sherman*, 116 Cal. 169; *Kimball* v. *Davis*, 52 Mo. App. 212; *Dale* v. *Atchison etc. Ry. Co.*, 57 Kan. 601; *Langdon* v. *New York R. R. Co.*, 11 N. Y. Supp. 514; *Arnold* v. *Potter*, 22 Iowa, 194.) Personal property is governed by the law of the domicile of the owner. (*Whitney* v. *Dodge*, 105 Cal. 197; 3 Am. & Eng. Ency. of Law, 567, 568; Story on Conflict of Laws, sec. 472.) The wife had the right to change her domicile after the beginning of the divorce suit. (Civ. Code, sec. 129; *Derby* v. *Derby*, 14 Ill. App. 647; *Colvin* v. *Reed*, 55 Pa. St. 375; *Mellen* v. *Mellen*, 10 Abb. N. C. 331; *Hewes* v. *Hewes*, 16 N. Y. Supp. 119.) Her property was not in the custody of the court when plaintiff left Hawaii and became domiciled here, and decisions such as *Forbes* v. *Scannel*, 13 Cal. 242, applicable to title acquired elsewhere to property brought into this state, have no application. No state is bound to give effect to the law of a foreign state, to the prejudice of the rights of its citizens. (*Receiver* v. *First Nat. Bank*, 34 N. J. L. 454.)

McFARLAND, J. — Action on a life insurance policy. Judgment was for plaintiff in the court below, and from the judgment defendant appealed.

The respondent is a resident of California, where this action was commenced, and the appellant is a resident of the state of New York. The defense is rather a remarkable one; it rests upon a decree of divorce rendered by a court of the Republic of Hawaii in an action brought there against the present respondent by *the guardian* of her husband, — a decree which could not have been obtained here, — and upon a Hawaiian statute which has no force here, except by comity.

The material facts in the case are these: On September 14,

[6] 63 Am. Dec. 125.

1892, the respondent was the wife of one Henri G. McGrew, and she and her husband were then residing and domiciled in Honolulu, Hawaiian Islands. On that day the policy of insurance sued on was executed, by which defendant promised to pay five thousand dollars to the respondent herein, Alphonsine McGrew, upon the death of her husband, Henri, provided that she should be living at the time of such death. Henri died on the twenty-second day of October, 1894, leaving the respondent, his wife, surviving him. In 1893, Henri and respondent made a trip to California for the benefit of the health of the former; and in the latter part of December, 1893, they returned to Honolulu, he being then in a very feeble mental condition from softening of the brain. When they landed at Honolulu they were met by one Carter, who assumed control over them, and ordered them not to go to the home in which they had been living, but to go to a hotel. It appears that soon afterwards Carter was the legally appointed guardian of the person and estate of Henri, who had then been judicially declared to be *non compos mentis;* but it does not appear when he became such guardian. A few days after respondent and her husband went to the hotel, Henri was removed by Carter from the hotel to a hospital. Respondent wanted to go back to the home where they had formerly lived, but Carter, who had the key and control of the house, would not let her, and he sold all the furniture in it, except a piano, which plaintiff claimed as her own. Carter would not furnish her a home or any money, and Henri was an imbecile, incapable of understanding the situation. On February 8, 1894, Carter, as guardian of Henri, brought an action on behalf of the latter to obtain a divorce from respondent, alleging adultery as the ground of divorce. Service of process was served on respondent in Honolulu, and she appeared in the action by an attorney, and filed a demurrer, and afterwards an answer denying the charge. On April 5, 1894, respondent left the Hawaiian Islands, with the intention of not returning there again, but intending to come to California and make her home here. She obtained the funds to pay the expense of the journey by the sale of her piano. She said that she came to California to make her home here, and also through fear that "they" would take her infant child away from her. She arrived here in the same month,—April, 1894,—and has since then constantly resided in California, intending it as her place of residence.

On August 25, 1894, the Hawaiian court entered a decree of divorce in the said action brought by Carter, dissolving the bonds of matrimony between this respondent and the said Henri (and it is not improper to say that the evidence in the case was conflicting). There was nothing in the pleadings in said case about property, and the decree was simply one of divorce, without any disposition of any other matter whatever. But there is, and at that time was, a statute of Hawaii which declares that "when a divorce is decreed for the adultery, or other offense amounting thereto, of the wife, the husband shall hold her personal estate forever."

Respondent contends that the judgment in the divorce suit should be held invalid because, in the absence of an express statute on the subject, an action for a divorce cannot be maintained by a guardian, and there is no such statute in Hawaii,— the only one relied on being the general provision that the guardian of an insane person "shall appear for and represent his ward in all legal suits and proceedings, unless where another person is appointed for that purpose"; but, admitting these legal propositions to be correct, the courts of Hawaii have held otherwise, and their construction of the statutes of their own country cannot be here assailed. (*McGrew* v. *McGrew*, 9 Hawaii, 475.) Full effect must therefore be given to the judgment in the divorce suit.

It is also contended by respondent that the judgment in the divorce suit was never absolute and final, because certain exceptions taken by defendant's attorney therein have never been disposed of, and it is provided by the Hawaiian statutes that "no order or decree for a divorce shall be made absolute until such exceptions shall have been disposed of." The transcript contains many things about the law of Hawaii touching the taking of exceptions in a trial court, and having them certified up to the appellate court, which are somewhat difficult to understand; but as the supreme court of that country seems to have held that the judgment in *McGrew* v. *McGrew* had become absolute (10 Hawaii, 117), and as there is no express finding on the subject in the case at bar, we are compelled to hold that the said judgment was final and conclusive as to the matter therein adjudicated.

Under our views of the case, it is not necessary to determine the points made by respondent that the Hawaiian statute has no force here, on the ground of comity, because it is penal,

works a forfeiture, and is contrary to the public policy of this state, etc.

As the plaintiff herein was served in Hawaii with process in the divorce suit, and appeared therein by attorney, the court there had jurisdiction, and the judgment therein rendered concludes her as to the one thing adjudicated therein. But the judgment is merely a decree of divorce; it does not deal with any property rights; and if, as claimed by appellant, all the personal property of respondent, including the policy sued on, passed to her husband, that result must have flowed from the said Hawaiian statute providing for the forfeiture of the wife's property, and not from anything decreed in the judgment. It was not a case where the adjudication by final judgment of property rights asserted in the pleadings relates back to the commencement of the action; for in that case there were no property rights averred, or considered, or adjudicated. The respondent's right to her property was not affected by the mere pendency of the suit for divorce, and the statute had no applicability until the entry of the judgment. The question, therefore, is, What was the right of respondent to the property involved at the time when the said statute could be invoked? And it is clear that if at that time she was domiciled in California, the Hawaiian statute had no operation upon her or her personal property here; for the law which governs personal property is the law of the domicile. (See *Whitney* v. *Dodge*, 105 Cal. 192, and authorities cited.)

In our opinion, the respondent, at the time when the Hawaiian statute took effect, was domiciled in California. This is clearly so, unless we must ignore her *actual* residence on account of the maxim (or "fiction," as it is sometimes called) that the domicile of the husband is the domicile of the wife. We think that the reason of the rule, and of course the rule itself, ceases when the husband discards his wife by instituting proceedings for the dissolution of the bonds of matrimony. The theoretical unity of husband and wife dissolves in the presence of a legal proceeding, the direct and only purpose of which is to destroy that unity. This is admitted to be so where the wife brings the suit for divorce; but the reason of the rule applies to her, whether she be plaintiff or defendant; her interests and rights as defendant are frequently more serious than any she could have as plaintiff. It is not the law that a husband who is a plaintiff in a divorce suit can—as in

the case at bar—actually put his wife out of his home, and at the same time successfully claim that, by operation of law, she is still in it. We think that the correct principle is stated in the decisions hereinafter noticed. In some of them it was held that the divorce itself was invalid outside of the state in which it was granted, because founded upon the theory that the domicile of the husband was the domicile of the wife, contrary to the actual fact; but the principle applies much more strongly to the case at bar, where the question is, not as to the validity of the divorce, but as to the operation of a foreign statute upon her and her personal property at a time when she and the property were in this state.

In *Irby* v. *Wilson*, 1 Dev. & B. Eq. 568, the parties had married in South Carolina, where they were then domiciled, had afterwards removed to and established a residence in Tennessee, and then, after a separation, the wife had gone to North Carolina and permanently resided in the latter state, and afterwards the husband had obtained a decree of divorce in Tennessee. The opinion of the court contains interesting discussions of the doctrine of the extraterritorial force of laws and judgments; but the decision turned on the single point that the domicile of the wife at the time of the divorce was in North Carolina, and not in Tennessee, where the domicile of the husband was. The court, among other things, say: "The aphorism that the husband and wife are but one person has been alluded to as founding the argument that his domicile is necessarily hers. . . . But it is a mere fiction, which is never allowed, even in the common law, to obscure, much less defeat, justice. They are two persons to make a marriage contract. They must also, necessarily, be two persons to litigate between themselves upon any subject, and, above all, upon the obligation, continuance, or dissolution of that contract. They are not, therefore, so identified that they cannot have opposing interests; that they cannot have separate existences and separate residences and homes. If the argument of the counsel were well founded, it would prove that the husband might sue his wife for a divorce, enter her appearance, and in her name confess his own allegation." In *Mellen* v. *Mellen*, 10 Abb. N. C. 329, the court declare the law—we quote for brevity from the *syllabus*—as follows: "Although, *prima facie*, the domicile of the wife is the same as that of the husband, the law recognizes an exception to the rule when *the husband begins*

*an action to dissolve the marriage contract.* In such case, the theoretical identity of person and interest ceases to exist, the legal fiction of one domicile no longer operates, and the jurisdiction of the court to entertain the action depends upon the actual existing facts." In *Colvin* v. *Reed*, 55 Pa. St. 375, the question involved was that of the domicile of parties to a divorce suit, and the court said: "But the unity of person created by the marriage is a legal fiction, to be followed for all useful and just purposes, and not to be used to destroy the rights of either, contrary to the principles of natural justice, in proceedings which from their nature make them opposite parties. It required their mutual consent to establish the relation from which the unity arises; and the same law of right demands them to be viewed in their separate natural condition when either proceeds against the other to destroy this relation. It is the necessary effect of their being opposite parties in the same proceeding." (See also *Derby* v. *Derby*, 14 Ill. App. 647; *Hewes* v. *Hewes*, 16 N. Y. Supp. 119.)

The principle declared in the above cases is recognized and restated in section 129 of the Civil Code of this state, as follows: "In actions for divorce, the presumption of law that the domicile of the husband is the domicile of the wife does not apply. After separation, each may have a separate domicile, depending for proof upon actual residence, and not upon legal presumptions." There is no reason for limiting this broad provision to cases where the wife is plaintiff. In the case of *Wickes'* *Estate*, 128 Cal. 270, cited by appellant, there was no question as to the law of domicile as between husband and wife when they are hostile parties to a suit for divorce. There had been no divorce nor action for divorce in that case, and no question touching any phase of the subject of divorce was before the court. There, a married woman had been living, at the time of her death, in a county different from the one in which her husband was living, and in which she formerly lived with him; and it was merely held that under those circumstances the jurisdiction of the administration of her estate was in the county where her husband resided.

Our conclusion is, that at the date of the decree of divorce the respondent was domiciled in California, and had been since she came here in April, 1894; and that therefore the Hawaiian statute under which the forfeiture of her personal property is claimed had no effect upon her or her property in

California. It is not necessary, therefore, to consider the point made by respondent, that even if her domicile continued to be that of her husband until the date of the decree, yet upon the entry of the decree her actual residence instantly became her legal residence, and that if the decree, the legal change of residence, and the taking effect of the statute were simultaneous, the court, under the rule that a forfeiture will always be defeated if possible, will give precedence to the change of domicile.

The court did not err in excluding evidence of the fact that appellant had satisfied a judgment recovered against it by the administrator of Henri G. McGrew on the policy here sued on, in an action to which the respondent here was not a party. The fact that appellant paid the policy to the wrong party would be no defense to an action brought by the right party.

Under the views which we have taken of the case, the other exceptions argued by appellant are of no importance.

The judgment appealed from is affirmed.

Garoutte, J., Van Dyke, J., and Henshaw, J., concurred.

Rehearing denied.