LYDIA T. MATTHEWS, RESPONDENT, v. DAVID S. MATTHEWS, APPELLANT.

In the Springfield Court of Appeals. January 15, 1931.

W. B. *Linney, Howard Gray* and *A. G. Young* for appellant.

*Ralph B. Nevins* and *Mercer Arnold* for respondent.

SMITH, J.—This action was commenced by the respondent, hereinafter called plaintiff, in the circuit court of Hickory county in October, 1929, to set aside a decree of divorce granted the appellant, hereinafter called the defendant, by that court at the November term, 1928, upon the ground that the decree of divorce had been obtained by fraud upon the court and upon the plaintiff herein, and that the decree. was therefore void.

The seriousness of the effect of the final disposition of this case is so great, affecting not only the litigants in this proceeding, but others who are now so intimately connected with the litigants, as well as the public at large, that necessarily this opinion must be lengthy.

The petition filed in this case is very lengthy, covering about sixteen closely printed pages of the abstract, and since no complaint is made as to the petition, we do not set it out herein, but the petition in substance alleges that the plaintiff is and was at all the times mentioned in the petition the wife of the defendant, and that they were married on or about the 28th day of April, 1903, at Los Angeles, California, and that the defendant fraudulently intending to relieve himself from the bonds of matrimony so contracted, on the —— day of September, 1928, caused to be filed in the office of the

clerk of the circuit court of Hickory county, Missouri, a petition praying for a divorce from this plaintiff upon the false and fraudulently alleged ground that this plaintiff had deserted him on the —— day of October, 1921, while he and this plaintiff were living together in California, and upon the further false and fraudulently alleged ground that this plaintiff had rendered to him such indignities as to render his condition intolerable; falsely and fraudulently alleging that he was a resident of Hickory county, Missouri, and that, this plaintiff was a nonresident of the State of Missouri, and falsely and fraudulently obtained an order of publication and undertook to get service upon this plaintiff by a publication published in a paper in Hickory county; and that the institution of said suit in Hickory county, and the statements in defendant's divorce petition, and the affidavit that he was a resident of Hickory county were all false and fraudulently made with the intention of defrauding the court into granting him a decree of divorce, and were made as a part of a scheme of the defendant to defraud the court into accepting jurisdiction of said cause and awarding the defendant a decree of divorce, and that such allegations were supported by false and perjured testimony; that the residence of the plaintiff in the divorce suit was not Hickory county, but that said alleged residence was fictitious and fraudulent, and that he immediately left Hickory county upon obtaining the decree of divorce.

The petition alleged that defendant had on the first day of March, 1928, with intent to defraud the plaintiff, filed a petition for divorce in the office of the clerk of the circuit court of Jasper county, Missouri, in which he falsely and fraudulently claimed to be a resident of that county, and attempted to obtain a divorce upon the same grounds as alleged in the petition filed in Hickory county; and attempted to obtain service upon plaintiff by publication; that said suit was returnable to the April term, 1928, of the circuit court of Jasper county; that the plaintiff came from California, employed counsel, filed an answer to that petition and obtained an order for the defendant to pay to her temporary alimony or suit money in the sum of four hundred dollars, and that thereafter on the 29th day of May, 1928, the defendant appeared in the circuit court of Jasper county and voluntarily dismissed his cause of action; that in furtherance of his schemes to obtain by fraud, trickery and perjury a divorce from this plaintiff, the defendant filed in the office of the clerk of the circuit court of Jackson county, Missouri, on the 27th day of June, 1928, a petition for divorce alleging the same grounds for divorce as alleged in the petition filed in Jasper county, and in Hickory county, and alleging in said petition that he was a resident of Jackson county; that said cause was returnable to the September term, 1928; and that an attempt was made to obtain service upon this plaintiff by publication and that when this plaintiff heard of

said suit she again came from California to answer same, and again asked in her answer for suit money, and that on the 13th day of September, 1928, the defendant dismissed that suit for divorce; that the defendant on the 18th day of September, 1928, filed his petition for divorce in Hickory county, Missouri. The petition alleged that the defendant was not a resident of Missouri but was in fact a resident of California, and had not resided in Missouri one whole year next before the filing of his petitions for divorce.

The petition alleged that in addition to the false and fraudulent grounds for divorce and the false and fraudulent allegations that the defendant was a resident of Hickory county, the defendant supported the allegations of his petition for divorce by false and perjured testimony and thereby induced the court to believe him to be the innocent and injured party, and that the plaintiff had deserted him and had rendered his condition intolerable, when the defendant knew that if plaintiff was given an opportunity to defend against the charges that he could not obtain a divorce.

The petition alleged that the plaintiff had a good, sufficient and valid defense to each and all of the allegations contained in defendant's petition, and that it is not true that she deserted him in October, 1921, or upon any other date, or that she rendered his condition in life intolerable, or mistreated him in any way; but that the defendant rendered unto her such indignities as to render her condition intolerable, and that petition sets out the indignities of the defendant towards her as being an habitual drunkard, failure and refusal to support her and her child born of the marriage, failure to work or engage in employment and his persistence in engaging in drunken brawls to her great shame and mortification, and in associating with men and women of questionable and immoral character, and conducting himself so as to cause her to fear for her health if she should cohabit with him as his wife.

Said petition sets out in the minutest detail the conduct on the part of the defendant in his attempts to defraud the plaintiff, as well as the court, and that the court was deceived and misled into granting a decree of divorce and that the divorce was obtained by fraud upon the plaintiff and upon the court, and closed with the following prayer: "WHEREFORE, plaintiff asks that said decree of divorce be declared fraudulent and void and vacated, set aside and for naught held, and that she be restored to all of her lawful rights as the legal wife of defendant, and for such other and further relief as to the court may seem proper and for the costs of this case."

The answer filed in this cause, caption and signature omitted, is as follows:

"Comes now the defendant and for answer to plaintiff's petition says that it is true that at the November term, 1928, of this court

the defendant in an action duly and regularly instituted and served wherein he, David F. Matthews, was plaintiff and plaintiff herein Lydia T. Matthews, was defendant, obtained judgment for divorce but denies that there was any fraud or deceit practiced upon the court or the defendant in that cause and says that at the time of the filing of said suit on the ——— day of September, 1928, he was a resident of Hickory county, Missouri, and at that time had resided in the State of Missouri one (1) whole year and more next before the filing of said suit. . .

Defendant for further answer to plaintiff's petition herein says that all other allegations, matters and issues contained in plaintiff's petition herein were fully adjudicated and determined in the trial and judgment rendered at the November term, 1928, of this court in the case wherein David F. Matthews was plaintiff and Lydia T. Matthews defendant. Defendant for further answer to plaintiff's petition denies each and every allegation therein.

"Defendant having fully answered asks to go hence without day."

Thereafter the trial court rendered the following judgment in this case:

"Now on this 19th day of May, 1930, it being the third judicial day of the April term, of the circuit court of Hickory county, Missouri, this cause comes on for hearing, and the plaintiff appears in person and by Mercer Arnold and Ralph B. Nevins, her attorneys of record, and the defendant appears in person and by W. B. Linney and A. G. Young, his attorney of record, and both parties announcing ready for trial, said cause is taken up by the court, and having been seen, heard and understood, the court doth find that upon the 18th day of September, 1928, the defendant herein caused to be filed in this court a petition praying for a divorce from the plaintiff herein, upon the grounds of indignities and desertion, and that a decree was rendered in favor of this defendant, dissolving the bonds of matrimony theretofore contracted by him with the plaintiff herein, at the November term, 1928, of this court, and upon the 20th day November, 1928, that the defendant herein had at that time, and for more than one year prior to the institution of said suit, been a resident of Missouri, and the plaintiff herein was a nonresident of the State of Missouri, being in fact at said time a resident of the State of California and the court further finds from the evidence in this cause that at the time of the institution by the defendant of said suit for divorce the defendant was not a bona-fide resident of Hickory county, Missouri, but pretended to claim a residence in said county for the purpose of fraudulently inducing this court to accept jurisdiction of said suit and for the further fraudulent purpose of concealing from the plaintiff herein the time and place of the institution of said suit with the intention of fraudulently preventing the plaintiff herein from learning of the institution of said suit in

time to appear and defend same so as to enable the defendant herein to obtain a decree of divorce by reason of said fraud upon this court, and upon the plaintiff herein.

"The court doth therefore find the issues in favor of the plaintiff; that the decree of divorce obtained by the defendant at the November term, 1928, of the circuit court of Hickory county, Missouri, was fraudulently obtained, and that this court was deceived, misled and defrauded into granting defendant a decree of divorce and that said fraud was of such nature as to require that said decree of divorce be set aside and for naught held.

"It is therefore adjudged and decreed that the decree of divorce obtained by the defendant herein in the case of David F. Matthews v. Lydia T. Matthews, Number 37, in the circuit court of Hickory county, Missouri, upon the 20th day of November, 1928, at the November term, 1928 of said court, be, and the same is hereby set aside, vacated and for naught held, and that said case be and the same is hereby dismissed and that the plaintiff herein, be, and she is hereby fully and completely restored to all of her lawful rights as a legal wife of the defendant herein, and that the costs of this case be assessed and taxed against the defendant."

Motion for new trial was filed and overruled as well as motion in arrest of judgment, and the defendant took proper steps for appeal, and the case is here, the defendant relying for reversal on the following assignments of error:

"1. The court erred in rejecting evidence tending to show that plaintiff was actuated by mercenary motives in seeking to set aside the decree of divorce.

"2. The court erred in permitting plaintiff to testify, in detail, concerning ill treatment she claimed to have received from defendant.

"3. The court erred in permitting plaintiff to introduce evidence tending to show that she was the party that was entitled to a divorce.

"4. The court erred in permitting plaintiff to introduce evidence except such as tended to show jurisdictional facts.

"5. The court erred in setting aside the decree of divorce granted to defendant."

A review of the testimony offered in this case shows the following state of facts: That defendant and plaintiff were married in Los Angeles, California, in 1903; that they continued to live together until 1920, at which time a separation took place in Los Angeles, California. Defendant claims that at that time plaintiff left him. This the plaintiff denies and claims that the defendant deserted her.

About this time the defendant removed to San Francisco, California, the plaintiff remaining in Los Angeles. A son had been born

of this marriage and at the time of the separation was about seventeen years old and remained with his mother.

In November, 1922, the defendant herein filed in the superior court of the State of California in and for the county of Sacramento, his petition for divorce, containing substantially the same allegations as was set out in his three separate applications in three counties in Missouri. At that time plaintiff was in Ohio on a visit and the defendant did not live in Sacramento county.

Plaintiff was served in Ohio, although apparently an attempt was made in California to secure service by publication. Plaintiff immediately went to Sacramento county, employed counsel and the case was never tried. No application for divorce in that case was made by plaintiff; she contenting herself with meeting the allegations of defendant's complaint.

In January of 1927, defendant was brought back to Missouri by his mother, a family friend and a doctor Dumbauld, because of illness. He recovered from that illness and returned to California in the summer of 1927, with his mother. They had both purchased round trip tickets and the mother returned, but the defendant gave up his round trip ticket and remained in California until January of 1928, when he returned to Missouri because of the serious illness of his father.

On the 1st day of March, 1928, he filed his petition for divorce in the circuit court of Jasper county, Missouri, and in this petition, as well as in each and every other petition for divorce filed by him in Missouri or in California he alleges that he is a resident of the county in which the suit is filed. The allegations of the petition filed in Jasper county are substantially the same as those which he had previously filed in 1922, in Sacramento county, California.

Plaintiff was still residing in California but no attempt was made to serve her under the provisions of section 1204, Revised Statutes 1919, but defendant attempted to serve by notice published in a Carthage, Missouri, newspaper under the provisions of section 1196, Revised Statutes 1919.

The plaintiff learned of the institution of this suit for divorce and came to Missouri, filed an answer and application for temporary alimony, but no cross-bill. The application for temporary alimony was heard and an award was made to her and upon May 29, 1928, defendant dismissed his application for divorce in Jasper county.

Within less than a month, or upon the 27th day of June, 1928, plaintiff having returned to California, defendant filed suit for divorce in the circuit court of Jackson county, Missouri alleging the same grounds as previously alleged in the application in California and in the Jasper county, Missouri, application, but stating under oath, that he was then a resident of Jackson county, Missouri. This suit in Jackson county, Missouri, was made returnable to the Sep-

tember term, 1928, of the circuit court of that county, which commenced that year upon the 9th day of September. Service by publication was attempted by publishing in the Daily Record of Kansas City, Missouri. Upon the first day of September, 1928, term of the circuit court of Jackson county, Missouri, the plaintiff filed a motion to dismiss the suit for divorce upon the ground that the defendant was not a resident of Jackson county, Missouri, and upon the fourth day of the September, 1928, term, upon the 13th day of September, 1928, the defendant dismissed his suit for divorce.

Five days later upon September 18, 1928, defendant appears in Hickory county, Missouri, and upon that date filed his fourth petition for divorce upon the same grounds as had been alleged in the three prior proceedings, but this time alleged under oath that he was a resident of Hickory county, Missouri.

Plaintiff had taken the precaution to employ counsel to check the dockets of the courts in Jasper and Jackson counties against a second filing of said suit in either of said counties, but she did not have counsel at that time in Hickory county and the published notice in the Hermitage Index did not reach her, and upon November 20, 1928, defendant's perserverance was finally rewarded and a decree of divorce was granted him and thereafter possibly on the same day defendant ceased to be a resident of Hickory county, Missouri, and returned to the home of his father and mother in Webb City, Missouri.

In July, 1929, the plaintiff first learned of defendant's second marriage. She immediately took steps to ascertain where the decree of divorce had been obtained and in order to do so it was necessary to correspond with each circuit court clerk in the State of Missouri. As soon as this information was obtained this suit to set aside said decree of divorce was instituted in Hickory county, Missouri.

In the course of the trial of this cause various facts and circumstances and statements of defendant were introduced in evidence tending to substantiate the allegations of plaintiff's petition that the claimed residence in Hickory county was a sham and made for the fraudulent purpose of inducing that court to hear said cause in the absence of the plaintiff herein and for the purpose of preventing the respondent from learning of the pendency of said suit. Reference to some of these statements will be made in our opinion

We shall consider the assignments of error in the order presented by the defendant in his points and authorities, and under the first point the contention is that, "The record in the divorce case shows all jurisdictional facts and the court found them to be true. The decree, therefore, can be questioned only by appeal or writ of error."

Regardless of our personal opinion about the provision of section 1812, Revised Statutes 1919, and section 1811 thereof, we are com-

pelled to follow the rulings of our Supreme Court which hold that such a proceeding as we are considering here is an independent equitable action to set aside a decree of divorce, which invokes the ancient rules of equity, and which Supreme Court ruling expressly hold that such a proceeding as under consideration here is not the statutory bill of review. [See Dorance v. Dorance, 242 Mo. 625, 1. c. 659, 148 S. W. 94.] When the same case was before the court again as shown in 257 Mo. 317, 165 S. W. 783, at page 325 of the opinion the court uses this forceful language: "We decline to recede from the rules of law announced in our majority opinion when this case was here upon the first appeal (242 Mo. 625).

"If section 2381, Revised Statutes 1909, forbidding a petition for the review of a judgment for divorce, is intended to prohibit relief in equity against such frauds as were perpetrated upon the circuit court and upon the plaintiff in obtaining the divorce granted to. defendant, then clearly such section is unconstitutional. The power of courts to grant equitable relief against frauds is as firmly interwoven in our system of jurisprudence as the power to grant relief at law.

"The people having expressly conferred equitable powers upon the courts of this State by the very Constitution which calls such courts into existence (Sec. 1, art. 6, Constitution of Missouri), the General Assembly cannot withdraw or unreasonably restrict such powers without violating the organic law.

"Section 22, article 6, Constitution of Missouri, vests the circuit courts with original jurisdiction in all civil cases not otherwise provided for. In the face of the foregoing constitutional powers, for the General Assembly to undertake to nail up the doors of the courts of equity by saying to them that whatever may be done under the forms of the divorce statutes is too sacred to be inquired into is an unthinkable anomaly."

The Supreme Court has not receded from that holding as shown by the cases of State ex rel. Conant v. Trimble et al., 311 Mo. 128, l. c. 138, 277 S. W. 916, and Crane v. Deacon, 253 S. W. l. c. 1071.

We have considered the authorities cited by the defendant under this point and while some of them seem rather persuasive yet in view of the holdings of our Supreme Court on this very question we must rule this point against defendant and hold that a divorce decree may be questioned by a proceeding in equity brought in the same court where the divorce decree was rendered even if brought at a later term of the court.

The second point is expressed by the defendant as follows: "Section 1802, Revised Statutes Missouri 1919, requiring divorce proceedings to be brought in the county where plaintiff resides is not jurisdictional."

The defendant in support of his contention cites and relies on the rulings in the following cases: "Werz v. Werz, 11 Mo. App. 26; Gantt v. Gantt, 49 Mo. App. 3; Lagerholm v. Lagerholm, 133 Mo. App. 307; Nolker v. Nolker, 257 S. W. 798, l. c. 802; and Fears v. Riley, 148 Mo. 49."

The plaintiff in his brief makes no quarrel with the defendant on this point and concedes that those cases hold that the provisions of section 1802 fix the venue and are not jurisdictional, and we think that position is correct but in the cases relied upon the defendant either waived the point by pleading to the merits, or filed a plea in abatement. In the Nolker case, supra, the defendant filed answer and raised the point of plaintiff's residence, and the Supreme Court considered the evidence on that point and found unquestionably that the plaintiff was actually residing at the place of bringing suit. But in that case the question of the plaintiff's residence was a controverted issue and one passed on by the court, and does not hold that the provisions of section 1802 is a nullity nor do any of the cases cited so hold, nor do they hold that the suit need not be brought where the plaintiff resides in some instances, but the Nolker case does hold, as we view it, that where a suit is brought in a county other than that of the plaintiff's residence, jurisdiction will not be had over the defendant by publication, unless the defendant appears and waives the question of jurisdiction. The court's language on that point is as follows: "It follows that the only question of jurisdiction involved in the institution of a suit for divorce in a county other than that in which the plaintiff resides, is that of jurisdiction of the person of the defendant. This he may waive as did the defendant in this case." In the case before us the record shows that service in the divorce proceedings was by publication and no appearance was made by the defendant, and of course there was no waiver. She had no knowledge of the proceedings, had no information as to the time or the place where the suit would be heard, and since it was filed in a county not the residence of the plaintiff, in our judgment it was filed in a county where service could not be had by publication upon the defendant in that suit. We think we are further sustained in this conclusion by what the Supreme Court evidently had in mind when writing the opinion in the case of Crane v. Deacon, 253 S. W. 1068, where on page 1071, it used this language: "The case of Dorance v. Dorance, 242 Mo. 625, 148 S. W. 94, and 257 Mo. 317, 165 S. W. 783, was a suit in equity to set aside a decree of divorce. It was held that there was gross fraud in procuring the judgment for divorce, and that it should be set aside. The service was by publication; a false statement as to residence, a judgment by default, and no opportunity to defend the suit. In each of those cases the defendant had no opportunity to meet the issues."

The third point submitted by defendant for our consideration is that "After the remarriage of the prevailing party, a divorce decree should be vacated only upon a very strong showing," and cites 19 Corpus Juris, page 163, section 411 and several decisions in other States, but cites no Missouri decisions.

We agree with the defendant that a divorce proceeding should not be set aside after the remarriage of the prevailing party only upon a very strong showing, but we can think of no condition of affairs that would make a stronger showing of fraud on the court and on the defendant in the divorce case than is shown by this record. We realize that the last wife in this case should be considered, and that is one of the things that makes this a hard case for the writer of this opinion, but we fully realize that there are others who should be considered, among them is the first wife the mother of the son that was born of that unhappy marriage, the one who cared for the defendant in this case in and after his many drunken brawls; and then too, there is the public, and society in general, that should be considered as well as the courts. Our Supreme Court has laid down the rule in this State, in the following language: "The doctrine that the last husband or wife takes precedence of all predecessors is a dangerous one, which we should feel slow to recognize as a part of the judicial policy of the State. There may be instances, as Judge Scott suggests, where innocent women will suffer in maintaining the integrity of the marriage relation; but in such cases the suffering will not come from the protection extended by the courts to those who honestly and sincerely fulfill the obligations incident to that relation, but from the fraud and wrong of those who treacherously violate them. If we prevent frauds of this kind there will be no victims. If we encourage and condone them the victims will be at our doors clamoring for justice. The policy indicated in the judgment of the circuit court in this case would hold out the promise of easy success to men and women who desire to free themselves from their present matrimonial obligations for the purpose of contracting new ones, and every case would have its innocent victim. If the ties that bind us to our domestic relations are to be strained and broken, the responsibility should not rest upon the courts." [Dorance v. Dorance, 242 Mo. 625, l. c. 659, 148 S. W. 94.]

The testimony was overwhelming that the defendant did not live in Hickory county at the time he filed his suit for divorce. He first came back from California in January, 1927, while he was sick, and later returned to California and stayed there until February, 1928, and at that time returned to his father's home in Jasper county because of the sickness of his father, and within a month after returning to Jasper county filed a suit for divorce, claiming at that time he was a resident of Jasper county, when his wife

appeared upon the scene that suit was dismissed, and in less than a month thereafter he filed another suit in Jackson county, and while his wife was in California, and at that time claimed to be a resident. of Jackson county. Again his wife appeared and again on September. 13, 1928, he dismissed that suit. Five days thereafter he appeared at Hermitage and on that date filed a suit there, claiming. to be a resident of Hickory county, and undertook to get service by publication in that suit. The shifting about of the defendant, the filing of the three suits within eight months in three different counties, giving his residence as in each of the three counties, makes it very suspicious. But these facts, coupled with his own vacilating and evasive testimony while on the stand, with his reason given for going to Hickory county was his intention to hunt quail, when the open season for hunting quail would not start for practically two months after he said he went there for the purpose, and this considered with his leaving on the day of his divorce although the quail hunting season was just starting and this, followed by his mother's testimony that his place of residence was and had been all the time since his return from California at the residence of his father in Jasper county, and this followed with the statement of another witness that he had said if he got a divorce in that county it would be a "Bootleg Divorce," together with the fact that he had before his return from California filed a suit for divorce in which his cause of action as set out in the petition was almost exactly the same as given in the three petitions filed in this State, all go to show that the defendant was not willing to go to trial in any court when the plaintiff was present, but that he was attempting to find a forum and have a hearing where and when the plaintiff would not have an opportunity to be present and heard. And the going to this rural county and by that means not only taking a fraudulent advantage of this plaintiff, but also the citizens of that county, as well as the court before which and against which his fraudulent schemes were perpetrated, is too flagrant and fraudulent for the courts of this State to countenance in any manner. And this is true after full consideration of the facts that another has been brought into the obnoxious situation by marriage since the fraudulently obtained decree of divorce, and that it will cause embarrassment to her and her relation. But we can reach no other conclusion when we consider the seriousness of trifling with the courts of our State, as well as the interest and rights of the plaintiff in this case, and the welfare of society in general.

The fourth point submitted by defendant is "A party seeking to set aside a decree of divorce must not be actuated by mercenary motives."

We have examined the offering of testimony by defendant to show that the plaintiff when asked why she didn't get a divorce

from the defendant said, "Do you suppose I am going to let the Matthews money get away." Which testimony was excluded by the court, and we do not think this testimony if it had been admitted would have been sufficient to have changed the results, and we think it was not reversible error to exclude it, but we have considered it and other offered testimony, as offered, and think it not of sufficient importance to change the results.

It follows that the judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.