**Betty Jane McCARTY, Appellant,**

v.

**James M. McCARTY, Respondent.**

No. 45402.

Supreme Court of Missouri, Division No. 2.

April 8, 1957.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellant.

Thomas P. Rose, Jefferson City, for respondent.

STOCKARD, Commissioner.

On February 20, 1954, respondent, James M. McCarty, was granted a divorce from appellant, Betty Jane McCarty, by the circuit court of Putnam County. Appellant filed this suit in equity seeking to set aside the divorce and to have declared null and void a warranty deed and a property settlement executed prior to the divorce in contemplation thereof. The trial court entered a general judgment for respondent from which appellant has appealed.

The issues pertaining to the validity of the warranty deed directly affect title to real estate so this court has jurisdiction. Cleary v. Cleary, Mo.Sup., 273 S.W.2d 340 [10]; Walton v. Van Camp, Mo.Sup., 283 S.W.2d 493 [1].

The testimony is conflicting. In fact there are but few occurrences about which any two witnesses could agree. The statement of facts, or to use a more correct expression, the statement of the conflicting versions of the parties, necessarily must be lengthy.

Appellant's version: On February 1, 1954, respondent told his wife that he was going to the office of his attorney to talk about obtaining a divorce. He later called her by telephone and said that his lawyer wanted to talk to her. She objected, but he came to the house and took her to his lawyer's office. When she arrived the "papers" were already typed. She was told that she did not need a lawyer because that would only increase the expense, and that she would be protected and treated fairly. She signed an "Entry of Appearance" whereby she entered her appearance as defendant in the divorce suit, waived the issuance and service of summons, and agreed that the suit for divorce could be set down for trial on any day. She also signed a warranty deed whereby she and her husband conveyed the title to their home, which was held by the entirety, to a straw party. This was done pursuant to a property settlement which she also signed and by which she released all her interest "in the house and lot, furniture, car and all other property, both real, personal or mixed" in consideration of the payment to her of the sum of $500 and the agreement of her husband to pay $25 a month for support and maintenance of their four-year-old child while she had custody of him. She was told that if her husband decided to go ahead with the divorce, the suit would be filed in Grundy County, the residence of both parties, and she would be notified and could be present at the trial. Nothing was said at any time to indicate that the divorce was to be obtained in Putnam County. The copy of the entry of appearance shows that in the caption and in the body thereof the word "Grundy" was erased and the word "Putnam" was then typed in. At the time she signed the entry of appearance the words "Grundy" appeared in both places. She was never advised that the petition for divorce was filed in Putnam County, and no summons was served on her and no answer or other pleading was filed in her behalf. With no notice to her, a default judgment for divorce was obtained in the circuit court of Putnam County, on February 20, 1954. Appellant stated that she was in the lawyer's office only about fifteen minutes, and following that conference until the time the divorce was obtained her husband continued to live with her and they continued their marital relations. During this time nothing was said about the divorce, and on the morning of February 20 her husband told her that he was going to a meeting. He returned in the afternoon and told her that the divorce had been obtained that day. She filed no motion with the court granting the divorce, and she took no appeal.

Respondent's version: On February 1, 1954, appellant told respondent that she had talked to a lawyer, whom she would not identify, concerning a divorce, and that if he did not get a divorce, she would do so. The parties discussed the question of custody of their child, and respondent then went to see his lawyer. After he had discussed the matter with his lawyer, he went to his home and brought appellant to his lawyer's office. She was not represented by an attorney, and respondent's lawyer advised her that he was representing him only but that she could have an attorney if she wanted one. (We note that the lawyer then representing respondent was not the lawyer representing him on this appeal, and that the lawyer was the personal attorney for Hayes McCarty, respondent's father.) The lawyer "explained" to appellant "the law of child custody," and he also explained "her rights in the properties of the parties." Precisely what was said is not shown. Appellant wanted a cash settlement so that she could return to Texas, and the lawyer, believing that the parties were going to agree on a property settlement, instructed his secretary to prepare "divorce papers," including a property settlement. The secretary typed the forms of the property settlement, warranty deed, entry of ap-

pearance and petition for divorce in that order. The entry of appearance contained the words "Grundy County" in the caption and the body thereof. However, just as she finished typing the entry of appearance, the parties decided that they wanted the divorce proceedings held in Putnam County in an effort to avoid publicity, and at the instruction of respondent's lawyer she erased the word "Grundy" and typed in the word "Putnam." This was done before the entry of appearance was signed. Respondent testified that his wife was the one who suggested the amounts of $500 as a property settlement and $25 per month for child support. These figures were inserted in the property settlement and the parties signed it. Both parties wanted to know when the divorce proceedings would be held and the lawyer called the circuit judge by telephone and made arrangements for the proceedings to be held at ten o'clock in the morning of February 20, 1954. Appellant was present when the call was made and she was then advised of the time and place of the hearing. According to respondent the appellant was in the lawyer's office about an hour and a half. Between February 1st and 20th respondent drove trucks on the road and he could not recall if he stayed at his home in Trenton over the weekends during that period. Neither could he recall what his conversations were, if any, with his wife on the morning of the hearing on the divorce petition. He admitted that he was cordial to his wife, but he denied that he resumed marital relations with her. A few days after the divorce a check in the amount of $500 was offered to appellant but she refused to accept it. The lawyer then gave her $500 in cash and obtained a receipt. Appellant expressed no dissatisfaction about the divorce or the property settlement, and about three weeks after the divorce she returned to Texas where her father lived. On June 1, 1954, respondent married Elmira Adalaide Boone, a divorcee with two children, with whom he had become acquainted in Kansas City before the divorce.

Independently of the divorce, appellant challenges the property settlement and the warranty deed executed pursuant thereto. Therefore, we shall set forth the evidence concerning the property owned by appellant and respondent. Title to a six-room house and adjacent lot in the city of Trenton was in their names but Hayes McCarty had paid all the consideration therefor. When this house was purchased another house was also purchased and title to it was taken in the name of Hayes McCarty and his wife. Respondent and appellant and Hayes McCarty and his wife executed a deed of trust on both houses as security for a note in the amount of $6,200 which also was signed by all four of these persons. Hayes McCarty had made 34 payments of $100 each on the note, leaving a balance of $2,800 due at the time of trial. Respondent had made no payments on the note. There was evidence that the house which was in the name of appellant and respondent was worth $5,000 to $5,500 at the time of the divorce, but Hayes McCarty testified that the house cost about $4,000. He also testified that "whenever we bought the houses and when they [appellant and respondent] moved in, it was supposed to be their house."

Respondent worked for Hayes McCarty in his trucking business and was paid $50 per week. Appellant also worked irregularly for the trucking company making collections and sorting statements, but there is no evidence that any payment of wages was ever made to her. However, bills for such items as taxes, auto licenses, coal for the house, and professional services of doctors and dentists were paid by checks drawn on the Trenton Motor Express or the McCarty Truck Line, trucking businesses owned or controlled by Hayes McCarty.

When the parties lived in Texas they purchased an automobile. Appellant paid $1,000 down for that car and made payments of $100 per month by a deduction from her salary until the unpaid balance was reduced to $200. This automobile was traded for a later model car which in turn was traded for a 1953 Mercury automobile.

Trenton Motor Express made all the payments on the 1953 Mercury which was worth approximately $1,500 at the time of the trial. The allowances made for the two cars when traded in are not shown.

The household furnishings consisted of the usual items of furniture, including a range, electric refrigerator, an electric sewing machine, an electric mixer, a set of silverware that cost $100, a toaster and a waffle iron. Appellant owned as her own property a set of dishes which had cost $350, and which apparently was considered to have been released to respondent by reason of the property settlement. Appellant estimated the furniture to be worth $1,000, but respondent placed a value on it of only $150.

In 1952 Hayes McCarty arranged to acquire for $12,500 the Trenton Motor Express, a trucking business operating as a common carrier. He then sold part of it for $12,000. Because the rules of the Interstate Commerce Commission prevented him from owning interests in two common carriers at the same time, all the capital stock of Trenton Motor Express was transferred by the sellers to persons other than Hayes McCarty, and 54⅓ shares of stock, one-third of the total number, were placed in the name of appellant. The value of Trenton Motor Express at the time of the trial according to Hayes McCarty was approximately $1,000. On March 13, 1954, the shares of stock in the name of appellant were transferred to the wife of Hayes McCarty.

■ In this suit in equity we review the case de novo, weigh the evidence, and determine on the whole record what relief, if any, should be granted. However, where, as in this case, there exists an irreconcilable conflict in the evidence on essential fact issues depending necessarily for determination on the credibility of witnesses, a situation exists wherein the application of the rule of deference to the findings and conclusions of the trial judge is especially appropriate. Gardine v. Cottey, 360 Mo. 681,

230 S.W.2d 731 [2], 18 A.L.R.2d 1100; State ex rel. Taylor v. Anderson, 363 Mo. 884, 254 S.W.2d 609 [8]. The trial court made no findings of fact and conclusions of law, but it entered a general judgment for respondent. Therefore, it necessarily found the fact issues in his favor.

■ Although we place but little credence on the testimony of respondent as to what took place in connection with the divorce, when we review the entire record and take into consideration the particular circumstances, together with the testimony of respondent's lawyer and that of the lawyer's secretary, we are convinced that the trial judge arrived at the correct result in refusing to set aside the decree of divorce because of fraud in the procurement thereof. In reaching this conclusion we have considered the evidence concerning the execution of the entry of appearance, the question of a waiver by appellant of additional notice to her of when the divorce proceedings would be held, the circumstances of the petition for divorce being filed in Putnam County instead of Grundy County, see King v. King, 237 Mo.App. 764, 170 S.W.2d 982; Tate v. Tate, 227 Mo.App. 1141, 59 S.W.2d 790, and other questions, in addition to those subsequently to be mentioned, which arise by reason of the procedure followed.

On this appeal appellants sets forth in the points in her brief two reasons why she contends that the divorce was procured by fraud. We shall consider separately these two contentions, which are that respondent's "concealment of the 'true facts' for which he believed himself entitled to a divorce constituted a fraud which made the divorce proceeding in question void," and that after the conference in his attorney's office respondent led his wife to believe that the divorce would not be obtained even though the "divorce papers" had been prepared. In support of these contentions, appellant cites McDonald v. McDonald, 175 Mo.App. 513, 161 S.W. 850; Coleman v. Coleman, Mo.App., 277 S.W.2d 866; and Matthews v. Matthews, 224 Mo.App. 1075,

34 S.W.2d 518. Appellant also contends that the trial court erred in refusing to admit evidence to show that respondent executed a false affidavit in support of his petition for divorce.

■ The allegations in the petition for divorce were based on "indignities." We are not permitted to be concerned on this appeal with the merits of those allegations. See Section 452.110 RSMo 1949, V.A.M.S. During the trial of the present case and in depositions which were introduced in evidence, respondent testified at length concerning various acts of misconduct on the part of his wife other than those alleged in the petition for divorce. Accepting these charges to be true for the purpose of this discussion, the question presented is whether respondent was guilty of fraud in the procurement of the divorce when he alleged in his petition only those grounds which he did, and did not allege other available grounds which might be considered to constitute more flagrant misconduct on the part of his wife.

■ In the above referred to cases cited by appellant the fraud consisted of wrongful acts committed by the plaintiff in a divorce suit for the purpose of causing the court to accept jurisdiction of the case improperly, or which caused the defendant therein to give up the right to defend the action when she otherwise would not have done so. Those acts were held to constitute fraud in the procurement of the divorce extrinsic to the matters which were or could have been adjudicated at the divorce hearing. Such conduct has generally been recognized as grounds for a court of equity to set aside the judgment for divorce. Dorrance v. Dorrance, 242 Mo. 625, 148 S.W. 94; Jones v. Jones, 218 Mo.App. 301, 272 S.W. 1038; Hairs v. Hairs, 222 Mo.App. 941, 300 S.W. 540; Coleman v. Coleman, supra. However, that is not the situation here. We must accept as true in this case that the grounds for divorce alleged in the petition were adequate and were supported by proof, and the mere failure of respondent to allege all the available grounds for

divorce, or the most scandalous grounds, did not in any way prejudice appellant, and does not constitute fraud in the procurement of the divorce which will authorize a court of equity subsequently to set it aside.

We turn now to the contention of appellant that the trial court erred in refusing to permit her to present evidence to show that respondent executed a false affidavit. It is appellant's position that respondent "never did have a meritorious cause of action in the original divorce proceedings, and that he knowingly executed a fraudulent affidavit in support of the divorce petition." Apparently this is based on the statement in the affidavit, among other things, that "the facts stated in the above petition are true." The affidavit referred to is the one required by Section 452.040 RSMo 1949, V.A.M.S.

■ Appellant relies principally on Coleman v. Coleman, Mo.App., 277 S.W.2d 866. In that case the plaintiff executed a false affidavit (not the one required by Section 452.040) and thereby obtained service by publication on the ground that the defendant was a nonresident when the plaintiff knew that the statements therein were false. The affidavit in this case, although essential to the jurisdiction of the court, State ex rel. Knappe v. Cowan, 230 Mo. App. 226, 88 S.W.2d 424, pertained to the truth or merits of the grounds for divorce alleged in the petition, or at least those are the respects in which it is contended to be false, which were matters adjudicated by the trial court when the judgment for divorce was entered. Therefore, while this suit is not strictly a petition for review, appellant actually is seeking to review the merits of the divorce, and Section 452.110 RSMo 1949, V.A.M.S., provides in part that "No petition for review of any judgment for divorce, rendered in any case arising under this chapter, shall be allowed, any law or statute to the contrary notwithstanding." It is true that courts of equity have set aside judgments for divorce because of fraud in the procurement thereof, but as stated in Jones v. Jones, Mo.App., 254 S.W.2d 260, 261, that fraud must have

been extrinsic or collateral to the matters which either were or could have been presented or adjudicated in the original proceeding and must not be "merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered." See also Grages v. Grages, Mo.App., 184 S.W.2d 749 [1]; and Crain v. Crain, Mo.App., 205 S.W.2d 897 [2]. It has repeatedly been held that false swearing and false averments in the pleadings do not give rise to an action in equity to set aside a judgment for fraud. Wabash Railroad Co. v. Mirrielees, 182 Mo. 126, 81 S.W. 437; Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284 [2], 162 A.L.R. 437; Howard v. Scott, 225 Mo. 685, 125 S. W. 1158 [5]. The trial court correctly rejected the offered testimony.

Appellant relies on McDonald v. McDonald, 175 Mo.App. 513, 161 S.W. 850, to support her contention that the divorce should be set aside because subsequent to the conference in the lawyer's office respondent led her to believe that the divorce would not be obtained. In the McDonald case the husband filed suit for divorce and induced his wife to file an entry of appearance. He then led his wife to believe that he would take no action to obtain the divorce decree, but he proceeded with the divorce action without notifying her and she was thereby denied the opportunity to be present and be heard. This was held to constitute fraud in the procurement of the divorce.

 In the present case there is an irreconcilable conflict in the evidence concerning what occurred after the conference in the lawyer's office. However, the trial court found these fact issues in favor of respondent. It would be a difficult task to resolve these factual issues from the record and without relying on the rule that in such situations an appellate court may defer to the findings of the trial judge. However, because of the circumstances of this case, it is not necessary that we express our views as to which version, that of appellant or respondent, is correct. The important factual situation which distinguishes this case from the McDonald case is that appellant admits that she had actual knowledge on February 20, 1954, that the judgment for divorce was entered on that day. Therefore, she had available to her in the trial court the full statutory period authorized to any defendant to correct an erroneous judgment. As far as is shown by the record, there was nothing which prevented her from presenting to the trial court the facts she now asserts as grounds to have the divorce set aside. It has been stated, and properly so, that for a court of equity to grant relief against a judgment of divorce upon the ground of fraud in the procurement thereof, the complaining party must be "able to show that he himself was free from fault, neglect, or inattention to his case." Jones v. Jones, Mo.App., 254 S.W.2d 260, 261 [1]. Assuming the factual situation subsequent to the conference in the lawyer's office to be substantially as contended by appellant, she has not shown that she is entitled to have a court of equity set aside the divorce.

 There is one matter not mentioned by appellant which deserves comment because of the possibility that failure to do so might be considered as indicating an expression of approval of the procedure followed by respondent's attorney in obtaining the divorce. The petition for divorce and the entry of appearance were filed in the circuit court of Putnam County, but appellant did not file an answer or any other pleading. Although appellant had 30 days within which to file her responsive pleading, the default judgment of divorce was taken 18 days after the petition was filed. It is true that by the "Entry of Appearance" appellant agreed that the "cause may be set down for trial at any day of the circuit court," but no cause may properly be set down for trial, absent an express agreement, unless it is at issue or the defendant is in default. What was meant by the above quoted phrase in the entry of appearance is not clear, but we think it did not constitute an express agreement that appellant was not to file an answer or otherwise not contest the divorce. If it did,

there is then presented the question of the effect of such an agreement which is clearly in violation of public policy. See Bloss v. Bloss, Mo.Sup., 251 S.W.2d 78 [2]; Farrow v. Farrow, Mo.Sup., 277 S.W.2d 532 [2]; Murray v. Murray, Mo.Sup., 293 S.W.2d 436 [5, 6]. One interpretation, and we think it a reasonable one, is that appellant agreed that the cause could be set down for trial without additional notice to her on any day when the trial court was authorized to set the cause for trial. Under this interpretation it would appear that the trial court entered a default judgment when the defendant was not in default. However, as previously noted, appellant testified unequivocally that on the day the judgment was entered she had actual knowledge of that fact. The trial court had jurisdiction of the subject matter and the parties. Therefore, by taking no action by way of motion to the trial court or by appeal, appellant waived any objection to the entry of a judgment for divorce only 18 days after the petition was filed.

This brings us to the issue of whether the property settlement, and the warranty deed executed pursuant thereto, should be set aside. By reason of the fact that the husband was granted the divorce the wife lost the rights in his property accruing to her by reason of the marriage, but her interest in the estate by the entirety was not dependent on her good conduct nor was it affected by her misconduct. Johns v. McNabb, Mo.Sup., 247 S.W.2d 640 [3]. Neither did she thereby lose her interest in the personal property which belonged to her and her husband. The testimony is not as clear as it might be as to who owned the household furniture, but it was accumulated during the married life of the parties, and for a substantial part of that time appellant worked and received a salary. In any event respondent does not claim that he owned it alone. Also the testimony is far from satisfactory to establish the extent of the interest of appellant in the Mercury automobile or in the Trenton Motor Express. However, her interest in the house and the furniture appears to have

been substantial, and far in excess of the $500 cash settlement.

This is not a case where the wife received nothing for the release of her interest in the property held by the entirety as in Johns v. McNabb, supra, and this case is to be distinguished from those where each party was adequately represented by counsel and as a result of a negotiation free from fraud, undue influence or unfair advantage they arrived at a property settlement which later turned out to be less advantageous for one of the parties than if there had been no agreement. In this case appellant was not represented by an attorney, but respondent's lawyer purported to advise her of her rights in the property of the parties. As the lawyer testified, "She [appellant] had a lot of free advice." It is contended on behalf of the respondent on this appeal that the trial court reached the result it did because it was convinced that Hayes McCarty had a resulting trust in the house in which the record title was in the names of appellant and respondent, and it is reasonable to assume that respondent's attorney so advised appellant when he explained to her what interest she had in that property. But, this same counsel was also the attorney for Hayes McCarty, and presumably he was looking out for his interest as well as that of respondent. The testimony of Hayes McCarty strongly indicates that he made a gift of the house to respondent and appellant. Although the lawyer contends that he was representing respondent only, he did purport to perform the services of a lawyer for appellant in advising her of her property rights, and he could not fully advise appellant of her interest without acting adversely to the interest of his clients, and he could not protect fully the interest of his clients, as he would be expected to do, without acting adversely to the interest of appellant. It is inconceivable that if appellant had been advised that she owned one-half of the house and lot and an interest in the furnishings that she would have disposed of her interest for $500, and if there was a question concerning her ownership or the extent of her in-

terest, her action in releasing that interest should not have been the result of legal advice received from the lawyer of those whose interests were adverse to hers and who would stand to gain substantially by her action. If no property settlement had been made, when the divorce was granted she would have been the record owner of an undivided one-half interest in the house as a tenant in common with her former husband, and apparently would have had a substantial interest in the furnishings. Then the burden would have been upon respondent and Hayes McCarty to establish otherwise. Appellant had no attorney whose first loyalty was to her. She had no relative in Trenton or nearby to whom she could turn, and she was young and inexperienced in business matters. This lack of business experience is clearly indicated by the fact that she was induced by respondent and his attorney to convey away her interest in the house which served as security for the payment of a note signed by her with a balance of $2,800 due thereon without any arrangement or promise to relieve her of liability on the note. Ordinarily an agreement between husband and wife for a property settlement must be procured without a violation of the general rules which control the actions of persons occupying confidential relations with each other, unless the confidential relationship has already been severed and the parties are dealing with each other at arm's length, as through an agent or attorney. 42 C.J.S., Husband and Wife, § 593b. This latter situation is not the case here, and we keep in mind that respondent and his lawyer were the moving parties, and that it was on their inducement that appellant went to the lawyer's office and signed the property settlement. In addition to being free of fraud and supported by consideration, agreements between husband and wife in settlement of property rights should, under all the circumstances, be fair, just and equitable. Bloss v. Bloss, Mo.Sup., 251 S. W.2d 78 [3]; 42 C.J.S., Husband and Wife, § 593b. This latter requirement is not present in this case, and we cannot escape the conclusion that, under all the circumstances, an unfair advantage was taken of appellant and that she was overreached.

We do not decide that the same property settlement voluntarily entered into by appellant would be void for want of consideration. Neither do we purport to determine what interest in the house and in Trenton Motor Express appellant has as against Hayes McCarty, or what interest she has in the Mercury automobile as against Trenton Motor Express, because neither Hayes McCarty nor Trenton Motor Express is a party to this suit. But under all the circumstances we are constrained to hold that as between appellant and respondent the property settlement and the warranty deed executed pursuant thereto should be and are set aside and held to be null and void.

The judgment is reversed and the cause remanded with directions to enter a judgment in conformity with the views here expressed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.