Nancy Jane SHIELDS, Plaintiff-Appellant,

v.

Spencer O. SHIELDS, Defendant-Respondent.

No. 24040.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1965.

Ronald Ray Riepen, Kansas City, for appellant.

Lillie Knight, Kansas City, for respondent.

MAUGHMER, Commissioner.

We have here a marital contest. The wife was granted a default decree of divorce and custody of the two children. Thereafter that judgment was set aside in response to a motion alleging lack of jurisdiction and then, after hearing testimony, the court granted a divorce to the husband and awarded custody of the children to a paternal uncle and aunt. The wife has appealed.

Nancy Jane Shields was lawfully married to Spencer O. Shields on June 3, 1956. Two children were born of the marriage— Spencer Ogden on May 31, 1957, and Toyna on October 14, 1958. This couple resided in Jackson County, Missouri, and separated during June, 1962.

The petition for divorce under which the plaintiff wife received the default decree recites that it was signed and sworn to by her on June 22, 1962. It was filed with the circuit clerk on July 12, 1962. Defendant husband on July 11, 1962, subscribed and swore to a document styled: "Entry of general appearance, waiver of personal service of summons, consent to trial and entry of decree without further notice". In the body of this document defendant "acknowledges receipt of a true copy of plaintiff's petition for divorce", waived personal service of summons, entered his "general appearance in said cause for all purposes", consented that the cause be set for trial and hearing without further notice and without his presence, or his attorney's presence. This entry of appearance bears the circuit clerk's stamp "Filed July 15, 1962". July 15, 1962, was a Sunday. The deputy clerk identified his signature on the filing stamp mark and as a possible cause for its being dated Sunday, stated that he might not have turned the date mark from Saturday all the way to Monday.

The defendant husband said he agreed to pay the attorney fee of $200 and understood the cause would be taken up and a default decree entered after he did so. He never paid this fee. The wife did and some ten months later, on May 16, 1963, plaintiff was granted a default decree of divorce, was awarded custody of the two minor children and $40 per week for their support and maintenance. No other proceedings of any kind took place of record until 63 days later when on July 18, 1963, defendant filed his "motion to modify divorce decree as to custody of minor children". Therein it was alleged plaintiff had assured defendant she would not seek custody of the children, and further declared there had been a "change in condition and circumstances", that plaintiff was unfit to have custody, and prayed that care and custody be awarded to him. In due time plaintiff moved for allowance of suit money and attorney fees and on September 13, 1963, defendant filed his written motion to set aside the default decree for "lack of jurisdiction". In that motion defendant charged that he was never duly served with summons or copy of the petition; that his entry of appearance was taken before the suit was filed, and that the court had no jurisdiction to entertain the suit or enter the decree of divorce. It should here be noted that no motion for new trial—timely or untimely—as to the default judgment was ever filed and no appeal therefrom was ever taken. In addition, the thirty day period during which the trial court retains control of its judgments had long since expired before the court took any action. Sections 510.340 and 510.370, V.A.M.S.

On October 4, 1963, the court set aside the default decree, defendant filed answer and cross petition and the court proceeded to hear testimony and tried the controversy on the merits.

The transcript is lengthy and contains some serious charges or at least suggestions of serious misconduct especially against the wife. The record showed that the defendant husband drank excessively, called his wife vile and indecent names and on occasions struck her and kicked her on the shins. Mr. Shields works for Sheffield Steel Company and earns approximately $500 per month.

There was testimony offered by defendant that plaintiff, who worked at Milgram's store, often neglected the children; that she stayed out quite often until the early morning hours, refused to state her whereabouts, drank frequently and sometimes to excess, and went to taverns in the company of married men. It was further suggested by defendant that she went out socially with negro men and frequented negro taverns. It was also charged that she carried on unnatural relationships with members of her own sex, especially with a high school girl and with a woman about her age who occupied the same living quarters. These women and plaintiff squarely denied any such relationships. Plaintiff denied ever having had any dates with negroes or going

into colored taverns. Plaintiff had ambitions to become an author. She had prepared and there was in evidence the outline of a novel which she planned to write depicting the acquaintance, courtship and final marriage of a white girl and a negro man.

The only direct and unequivocal testimony that plaintiff visited black and tan taverns or had dates with colored men came from the testimony of one Lawrence A. Randall. Randall is a negro, employed part time as an automobile salesman and, as he described it, a part time detective or private investigator. At the request of defendant he "investigated'" Mrs. Shields, and was specially directed to learn if she was "associating with people of the negro race". He testified that he followed plaintiff and her girl friend upon numerous occasions when they were in an automobile with two negro men. He detailed trips made by these four to various taverns and hotels. He testified partly from written notes which he claimed were made at the time. He told about these women being picked up at their home in the Lake Lotawana district in *December, 1962,* when in truth and in fact plaintiff and her girl friend did not move to the Lake Lotawana district until April, 1963. He denied that defendant had paid him for the investigations, stating he did not know how much his charges would be, that they "might be a million or might be nothing". This investigator at the time was 71 years of age, had one plastic eye and one eye which he said was good. The trial court indicated that it did not believe this man's testimony. Neither do we.

The testimony is clear that at the time the default decree was entered the minor children were residing with William W. and Sarah McKnight, paternal uncle and aunt. Thirty days later Mrs. Shields removed the children from this home. There was a sufficient showing that Mr. and Mrs. McKnight gave the children a suitable foster home.

On appeal plaintiff says (1) the court had no jurisdiction to set aside the default decree, (2) defendant is not the innocent and injured party and hence is not entitled to a divorce and (3) it is not in the best interests of the children to place custody with Mr. and Mrs. McKnight.

In connection with the order sustaining the motion to set aside the default decree for lack of jurisdiction the trial court said: "I am inclined to think that this entry of appearance was good under those decisions, technically correct, but unfortunately the judges, taking it for myself in this case, there are three parties to a divorce case, and one of them happens to be the State of Missouri, represented by this court. The custody and welfare of two very young children are involved in this case and therefore I am going to sustain this motion to set aside the decree and hear the case on its merits".

■ The court in which a divorce decree is granted—by default or otherwise—and where the care and custody of minor children is involved has the authority thereafter at any time to re-examine the matter of custody and upon a showing of substantially changed conditions since entry of the custody judgment to alter, modify or change that judgment in whatever respect is advisable and necessary in order to promote the best interests of the children. Schumm v. Schumm, Mo.App., 223 S.W.2d 122; Williams v. Williams, Mo.App., 211 S.W.2d 740, and Johnson v. Fish, Mo.App., 197 S.W.2d 990. It would seem that this rule requiring a substantial change in conditions might be relaxed and the discretion of the trial court possibly enlarged in default cases where the custody question was not fully explored at the time of the entry of the default decree. In any event, it is clear that the trial court here could hear testimony, consider and act upon defendant's motion to modify respecting custody of the children, without setting aside the divorce decree.

■ We believe the entry of appearance, even though signed before the suit was

actually filed, was sufficient to confer jurisdiction. In Gardner v. Gilbirds et al., Mo. App., 106 S.W.2d 970, it was squarely held that the preparation and execution of a written appearance and waiver of service of summons prior to filing of petition in divorce proceeding does not render the appearance and waiver void so as to furnish basis for subsequent suit by defendant to set aside judgment of divorce. The rule is stated in 159 A.L.R. p. 111, this way:

"The main argument advanced against the effectiveness of a written appearance or waiver of service executed prior to the filing of the complaint or other commencement of the action is that there can be no appearance, or waiver of service, where there is no suit or action, but in nearly all of the cases involving this situation, it has been held or recognized by inference, that such an appearance or waiver was valid and effective, notwithstanding it was executed prior to the filing of the complaint or bill".

We hold that the court had jurisdiction to enter the default decree of divorce on May 16, 1963, but was without authority to set it aside on October 4, 1963.

The trial court in its comments made just before setting aside the default decree, expressed the opinion that there was jurisdiction but that the judgment might be set aside because plaintiff had committed perjury. Two factual statements in her testimony were declared to be untrue: (1) her statement that she lived in Independence when in truth and in fact her residence was in the Lake Lotawana district—both being in Jackson County—and (2) she said the minor children lived with her when at the time they were actually residing with Mr. and Mrs. McKnight.

 There is nothing in the judgment order itself which purports to set aside the default for fraud in procurement and respondent does not offer this ground in support of the court's action. Moreover, we doubt if the misstatements referred to are sufficient to authorize cancellation for fraud. We quote from a Supreme Court opinion as to the essential requirements which would justify setting aside a divorce judgment for fraud. In McCarty v. McCarty, Mo., 300 S.W.2d 394, 400, 401, the court said:

"It is true that courts of equity have set aside judgments for divorce because of fraud in the procurement thereof, but as stated in Jones v. Jones, Mo. App., 254 S.W.2d 260, 261, that fraud must have been extrinsic or collateral to the matters which either were or could have been presented or adjudicated in the original proceeding and must not be 'merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered.' See also Grages v. Grages, Mo.App., 184 S.W.2d 749[1]; and Crain v. Crain, Mo.App., 205 S.W.2d 897[2]. It has repeatedly been held that false swearing and false averments in the pleadings do not give rise to an action in equity to set aside a judgment for fraud".

 Now as to the child custody question. Both parents are employed. There is considerable, substantial, credible testimony which casts doubt on the probability of either parent furnishing a suitable home and proper surroundings for the upbringing of the children. It is at least tacitly conceded that the McKnights can do so. There is a showing of a change in conditions compared to that existing when the default judgment was entered. We are impelled to affirm the action of the trial court in awarding custody of the children for two reasons: First, the trial judge saw, heard and appraised the witnesses and the parties themselves. We should and do defer to his conclusions unless we find them to be utterly wrong. Long v. Long, Mo.App., 280 S.W.2d 690. Second, if at any time it appears the children are not being properly cared for, the court upon proper motion can

re-examine the matter and upon a proper showing may modify or change its order.

The order of the trial court dated October 4, 1963, setting aside the decree of divorce granted plaintiff on May 16, 1963, and granting a decree of divorce to defendant is reversed and the court is directed to reinstate the decree of May 16, 1963. The judgment of October 4, 1963, granting custody of the minor children to Mr. and Mrs. McKnight is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.

BROADDUS, J., not participating.