**Ona Faye WATSON, Respondent,**

v.

**Donald J. WATSON, Appellant.**

**No. 57071.**

Supreme Court of Missouri,
Division No. 1.

Jan. 14, 1974.

Melvin E. Carnahan, Rolla, for respondent.

John L. Woodward, Steelville, J. Max Price, Salem, for appellant.

WELBORN, Commissioner.

On January 23, 1970, the Dent County Circuit Court entered a decree of divorce in favor of Ona Faye Watson, plaintiff, and against her husband, Donald J. Watson. On July 13, 1970, the defendant filed a motion, under Rule 74.78, to set aside the decree and to nullify the property settlement agreement of the parties and set aside the property transfers, including deeds to real estate, made pursuant to such agreement. A hearing was held on the motion on June 16, 1971. At the conclusion of the hearing, the trial court overruled the motion. This appeal followed.

In this court, appellant has not attacked the judgment of the trial court insofar as it relates to the decree of divorce. The attack is directed solely at the refusal of the trial court to set aside the property settlement and the deeds executed in connection with the settlement. See McCarty v. McCarty, 300 S.W.2d 394 (Mo.1957). The basis of that attack is that "unfair advantage was taken of defendant and he was overreached."

Appellant was 46 years old at the time of the hearing on the motion in June, 1971. He had nine years' schooling and had been employed for 24½ years at Echo Supply and Die Factory in Cuba. He was a die filer and had a take-home pay of approximately $123 per week at the time of the divorce.

Appellant and Ona Faye were married June 25, 1949. They had no children. Throughout the marriage she worked at a variety store in Steelville. She also worked in insurance, worked evenings as a hairdresser and ran a small dairy and cattle operation on the farm which she and her husband bought in July, 1967. Ona Faye handled the financial affairs of the household. Appellant just turned over his check to her.

Ona Faye filed suit for divorce in October, 1969. Summons was served on appellant October 19, 1969. On November 29, 1969, he consulted Mr. Dorman Steelman, an attorney in Salem. Steelman agreed to represent appellant for $250. He was paid $20 on that date. At some later date, not clear from the evidence, appellant wrote Steelman that he "couldn't afford him." According to appellant, he wrote Steelman to that effect on December 7, 1969. However, appellant testified that he wrote such a letter after he had signed a property settlement agreement on December 11. A letter, dated January 16, 1970, from Steelman to appellant was offered in evidence. It referred to appellant's letter of January 16, 1970 and stated: "In view of the fact that you will not pay me for my services rendered, I will not appear in your behalf."

What is clear is that the settlement was worked out between appellant and his wife and appellant did not seek or receive Steelman's assistance or advice concerning it. According to appellant, Ona Faye had presented two prior settlements which he had rejected. His version was that Ona Faye had not discussed with him the settlement signed on December 11, 1969. He testified that Ona Faye brought the agreement to him at the trailer where he was living and wanted him "to go down to Tip Counts' and sign the paper." He said he had no further discussion with her about it. He read it and signed it voluntarily and went with his wife to Counts, a notary public, who took his acknowledgment to the agreement.

By the terms of the agreement, Ona Faye was to receive the 57-acre farm, with a two-year-old six-room house on it which they had bought for $28,000 in 1967. She assumed a $14,150 indebtedness on the place. She also received the furnishings, livestock, farm machinery and a 1965 Oldsmobile. Appellant received a lot in Cuba on which there was a 50-year-old five-room house and a mobile home, purchased in 1966. The property, valued at $6,000 to $7,000, had an encumbrance of $3,118 which appellant assumed. He also received a 1963 Ford pickup truck. The agreement also called for Ona Faye to receive alimony in gross of $4,800, payable at the rate of $200 per month. Appellant testified that at the time he signed the property settlement he did not understand the value of the various items of property which he and his wife owned.

Apparently his claim of lack of understanding at that time, contrasted with his testimony as to the value of the property at the time of the hearing, was based upon a complaint of "nervousness," for which he had been taking "nerve medicine" since July, 1969.

The doctor who saw appellant in July, 1969 testified by deposition that appellant at that time had "a great deal of anxiety, some confusion." He recommended that appellant seek psychiatric assistance. He had no opinion as to appellant's ability to understand transactions which might have occurred on December 11, 1969 and January 23, 1970.

Ona Faye testified that she and appellant had previously worked out the December 11 settlement. She testified that after they had agreed to its terms, she called her attorney and told him what had been agreed upon. The attorney prepared the formal agreement and sent it to her and she arranged its execution.

There is some confusion in the record about the role of Steelman in the divorce hearing. As above stated, a letter from Steelman to appellant, dated January 16, 1970, was produced, in which Steelman stated that he would not represent appellant. Also introduced in evidence was a letter, dated January 9, 1970, in which Steelman wrote appellant that Ona Faye's attorney had advised him that a property settlement had been reached. Steelman told appellant that, under those circumstances, he would represent appellant for $150, $20 of which had been paid.

There was introduced into evidence a letter, dated January 13, 1970, from appellant to Steelman, which read:

"I've decided not to further contest the divorce petition and I see no reason to incur further legal expenses.

"Its my understanding is necessary for you to appear in my behalf. But I do not wish to contest the proceddings and prefer that the divorce be affective January 23 or as early as possible.

"In view of the fact I've all ready signed property agreements."

At the hearing, appellant acknowledged that this typewritten letter bore his signature, but he said that he had not seen the letter previously and that his signature was procured by "trickery" on the part of his wife. Ona Faye testified that she typed the letter from a handwritten draft written by appellant.

Hearing was held on the divorce petition on January 23, 1970. Mr. Steelman appeared as attorney for appellant and participated in the hearing.

Appellant testified that he had no notice that the divorce case was to be heard on January 23 and had no knowledge of the court's decree issued on that date, although he at least knew of it by March 1, 1970.

Ona Faye testified that she went by the trailer at which appellant lived on the morning of January 23. She told him what she was going to do that day and he said "Today you should be a free woman." He also gave her the balance due Steelman and told her, "Pay Mr. Steelman today." She came back by appellant's residence that evening and told him that the divorce

had been granted. Quitclaim deeds were executed in accordance with the settlement agreement.

Appellant acknowledged that his wife came to see him before she "came over here" on January 23. He knew that the divorce was going to be on or about then. He signed the deeds late in the day after he got off work, but didn't recall whether his wife told him she got a divorce that day. The quitclaim deeds introduced in evidence bore an execution date of January 23, 1970. The notary who took the acknowledgment testified that the parties appeared before her on that date.

The respondent's evidence below showed a deposit of $130.51 in the joint account of the Watsons on January 24, 1970, and a check for $130, payable to Steelman, drawn by Ona Faye and signed by "Donald and Ona Faye Watson" was presented in evidence.

The trial court, on substantially the above evidence, made a general finding, without findings of fact or conclusions of law, denying relief. Therefore, the fact issues involved are to be "deemed found in accordance with the result reached." Rule 73.01(b) V.A.M.R.

Rule 74.78 permits a judgment, under the circumstances there set out, to be set aside within six months "for good cause shown." The trial court presumably found that no good cause had been shown by appellant. Such conclusion is not clearly erroneous, particularly when the deference due is accorded the trial court's resolution of the conflicting testimony of appellant and his former wife.

Appellant's claim must rest upon his testimony that his emotional straits did not permit a rational judgment on the matters proposed by his wife, coupled with the asserted conspiratorial efforts to take advantage of him and keep him in the dark as to the events which occurred. His testimony of lack of understanding of the value of the property involved is entirely at odds with his trial testimony which revealed a clear awareness. Certainly he must have known at the time of the agreement of the purchase price of the fairly recently acquired tracts of real estate. Contrary to the situation in McCarty v. McCarty, 300 S.W.2d 394 (Mo.1957), relied upon by appellant, appellant does not even claim to have been unaware of the extent of his interest in the property. Appellant acknowledges that he had rejected prior settlement proposals, so he must have not been wholly lacking in ability to reason and bargain on the subject. He acknowledges that he read the agreement before he signed it. He does not claim that he was pressured into signing the agreement. Appellant's testimony regarding the events of January 23, 1970, the date of the divorce hearing and decree, is unconvincing. He acknowledges that Ona Faye was at his trailer early in the morning one day and that the deeds were executed in the afternoon of the same day, but said that he couldn't recall whether or not it was the day of the divorce which he knew was to be taken up around January 23. The evidence showed that the deeds were executed on that date and appellant's claim of having executed the deeds in these circumstances without knowledge that the divorce had been granted is hardly credible.

In addition to the weakness of appellant's testimony, there was contrary testimony of Ona Faye on a number of these matters. The trial court certainly had the right to accept her version and obviously did so.

The substance of the claim here asserted of unfair advantage and overreaching is based upon comparison of the value of the property which the parties received under the agreement. Appellant computes that considering the value of the town lot and trailer and pickup truck, less the encumbrance on the lot and the obligation to pay alimony of $4,800, appellant received property of the value of $432 whereas respondent received a net value of $21,950. These facts alone do not demonstrate that

**38**

the agreement was the result of unfair advantage or overreaching. The credible evidence was that the agreement was the result of bargaining between appellant and his former wife. The latter did manage the business affairs of the household, but that fact alone does not demonstrate that appellant was unable to arrive at a decision as to what division of the property should be made. He was aware of the contents of the agreement and the trial court correctly concluded that no good cause had been shown for setting aside the agreement.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.